BARNETTE, Judge.
Mack Trucks, Inc., sued H. R. Martens on a note for a deficiency judgment after the truck for which the note was given was seized and sold under executory process. Judgment was entered in favor of Mack Trucks, and Martens appealed devolutively to this court. We affirmed the deficiency judgment in an opinion handed down on July 2, 1962. La.App., 144 So.2d 655. While that appeal was pending, however, Martens filed this action in the trial court seeking to annul the deficiency judgment. The trial court found the judgment to be identical with the one under consideration in Mack Trucks, Inc. v. Dixon, La.App., 142 So.2d 605 (decided by this court on June 4, 1962, rehearing denied, July 2, *881 1962) ,[1] On this basis the trial court declared the deficiency judgment to be a nullity. Mack Trucks, Inc., has now appealed.
The chattel mortgage foreclosure proceeding from which the present litigation emanates was filed in the Civil District Court for the Parish of Orleans. The petition recited the fact that defendant Martens was a resident of Jefferson Parish. Pursuant to a writ directed to the sheriff of Washington Parish the truck was seized and sold after appraisement. There remained a deficiency of $8,745.49 for which Mack Trucks brought suit in Jefferson Parish against Martens. The case was continued several times while the parties negotiated a compromise settlement. Finally, a consent judgment, directly related to the settlement agreement, was submitted to the court by Mack Trucks’ attorney. This judgment was signed and filed on May 2, 1961.
We cannot agree with the trial judge that this case is identical with the Dixon case. They are identical only to the point of the filing of the suit for a deficiency judgment. In the Dixon case an exception of no right or cause of action was maintained. In this case no such exception was filed, but an answer was filed instead, following which the consent judgment was entered with the approval of the attorneys for both parties. We do not find any conflict in our decisions in the two cases.[2]
We said in this case on the first appeal :
“The prohibition and declaration of public policy of the Deficiency Judgment Statute, cited supra, is not applicable here, because the mortgaged property was sold after due appraisement and advertisement. Nor is there any question that the Civil District Court for the Parish of Orleans had jurisdiction ratione materiae. We know of no law that prevents a mortgagor from making a personal appearance and waiving venue in a chattel mortgage foreclosure. If a mortgagor can waive venue in the forclosure suit, we see no reason why, in a subsequent suit for a deficiency judgment, he cannot ratify the proceedings in the former, except where the proceeding was in contravention of a prohibitive law and the declared public policy of the state. Since the sale in the foreclosure suit was made in strict conformity with the Deficiency Judgment Statute, the consent to the deficiency judgment in this proceeding was in no manner in contravention thereof.” 144 So.2d at 657.
For the reasons stated by us in the above opinion and for the further reasons stated below, we cannot agree that the deficiency judgment was a nullity. The trial judge was in error in so holding.
There are now new and additional issues in the appeal presently before us — issues which were not brought into this litigation until after the first appeal was taken.
While the foregoing appeal was pending, Martens filed a petition on August 14, 1961, in this proceeding praying for a judgment nullifying the deficiency judgment of May 2, 1961. The issues raised by that petition were the same as those then pending appeal in this court; and, except for the filing of a supplemental petition on June 28, 1962, which raised new issues, our decision on first appeal would be definitive. The supplemental petition and the testimony and evidence in support of its allegations raised the issue contained in the following significant facts:
After the suit for a deficiency judgment was filed, defendant Martens, through his *882 then attorney, filed a brief answer amounting to a general denial. Because he was hard pressed by a number of creditors (including Mack Trucks), Martens then filed a petition in bankruptcy. Thereafter, negotiations were undertaken to find a basis for settlement of his debts, and, with the hope of success, Martens voluntarily withdrew his petition in bankruptcy.
A compromise agreement between Mack Trucks and Martens was finally reached on the claim for a deficiency judgment.
The substance of that agreement, as stated in a letter dated March 28, 1961, from Mack Trucks’ attorney to Martens’ attorney, was that the deficiency would be discharged in full by the payment of $3,500 by April 30, 1961. Pursuant to the agreement a deficiency judgment was prepared and was signed by both attorneys to indicate their consent to it. It was agreed that if the $3,500 was paid by April 30, the judgment would be surrendered to Martens’ attorney, otherwise, it would be submitted to the court for signing and entry into the record.
There was some conflict of testimony about an extension of time for payment. The discussion between the attorneys on this subject related to the timeliness of the first $1,000 payment which was made by check on March 28, as the agreement required, but the check was returned, marked “NSF.” This payment was then made by a certified check on April 4 and was accepted by Mack Trucks’ attorney. Additional payments were made as follows: $1,-000 on May 3; $1,000 on May 4; and $500 on May 16. In the meantime Mack Trucks’ attorney submitted the consent judgment to the court on May 2. The judgment was signed and filed that day. Neither Martens nor his attorney had knowledge of this until after the balance' of the $3,500 was paid May 16.[3] On May 22, 1961, Mack Trucks’ attorney wrote Martens’ attorney informing him that, since the payments had not been made by April 30, the compromise agreement was canceled, and that payment in full was expected on the May 2 judgment.
As indicated above we do not think the testimony is sufficient to prove that any express agreement for extension of time was reached, but it is our opinion that the evidence in the case heavily preponderates in support of a tacit extension. Mack Trucks broke faith with Martens when it accepted the payments of $1,000 each on May 3 and 4 and $500 on May 16, without informing Martens or his attorney that a judgment for the full amount of the deficiency had already been signed and filed. By this breach of faith, Martens was lulled into a false belief that the payments were accepted in settlement of the deficiency in accordance with the agreement, notwithstanding the tardiness of a few days. Mr. George W. Gill, Jr., Martens’ attorney who negotiated the settlement agreement, testified that, had he known the judgment had been signed on May 2, he would not have sent the $1,000 certified check, or permitted his client to take it to Mack Trucks’ attorney on May 3, but would have instructed him to destroy the check and file his petition in bankruptcy again.
The compromise agreement inured to the benefit of both parties. Except for the agreement, Mack Trucks would have been relegated to its chances through bankruptcy; or, worse still, except for the consent judgment, which was a part of the agreement, it would have recovered nothing as it did in Mack Trucks, Inc. v. Dixon, supra.
*883 Under the facts as they existed on May 2, there was no fraud nor ill practice in obtaining the judgment which would entitle Martens to have it annulled under LSA-C.C.P. art. 2004. Mack Trucks had a right under the agreement to submit it to the court for signing. Hence, for this reason, and for the reasons stated by us in the opinion in the first appeal herein, the judgment cannot be annulled. But the circumstances under which it was rendered and the events which followed thereafter render its enforcement inequitable.
The parties reached a mutually advantageous agreement. Relying on this agreement, Martens made payments totalr-ing $2,000 within two days after Mack Trucks had decided privately to treat the agreement as ended. Martens paid the agreed amount in full, within two weeks of the signing of the judgment. While these payments were' being made, Mack Trucks kept silent about the signing of the judgment even though it surely must have known that Martens thought he was paying off the compromise amount and would not have made the payments otherwise. We think that Martens should be granted some relief which would give him the same protection that the compromise he was attempting to fulfill would have given him.
Although Martens sought in this suit to obtain a judicial declaration of nullity, we are not limited to considering that remedy alone. On the contrary, our procedural law requires us to grant equitable relief when necessary to avoid injustice. LSA-C.C.P. art. 862 provides:
“Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.”
In addition LSA-C.C.P. art. 2164 requires appellate courts to “render any judgment which is just, legal, and proper upon the record on appeal.”
In reaching a decision as to what relief to grant Martens, we have searched our jurisprudence for cases containing a similar problem. Several decisions involving Code of Practice Article 607, the predecessor to LSA-C.C.P. art. 2004, indicate a judicial willingness to grant equitable relief against judgments where adherence to those judgments would be manifestly unjust. Typical of these cases is the language in Succession of Gilmore, 157 La. 130, 133, 102 So. 94, 95 (1924):
“It is true that said petition docs not charge ‘fraud’ or the ill practices specifically enumerated in the article of the •Code of Practice above cited. The remedy given by said article to annul judgments, however, is not restrictive. The courts of this state will not hesitate to afford relief against judgments, irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable. Our courts will follow the general principles of equity jurisprudence applied by the equity courts of the other states of this country in actions of this character. Lazarus v. McGuirk, 42 La.Ann. [194] 200, 8 So. 253; City of New Orleans v. Le Bourgeois, 50 La.Ann. [591,] 592, 23 So. 542.”
See also Alonso v. Bowers, 222 La. 1093, 64 So.2d 443 (1953); First Nat. Life Ins. Co. v. Bell, 174 La. 692, 141 So. 379 (1932); Tarver v. Quinn, 149 La. 368, 89 So. 216 (1921); Engeran v. Consolidated Companies, Inc., 147 So. 743 (La.App. 1st Cir. 1933). We are aware of the fact that in all of these cases fraud or ill practice was alleged and that the equitable remedy accorded in those cases where the fraud or ill practice was established was a nullification of the judgment. Since we have already stated that the judgment before us *884 ■cannot be annulled we do not cite the Gilmore line of cases as controlling the result of this suit, but point them out simply to show that our courts will exercise their equity powers to avoid unjust consequences which a judgment might have.
In Denis v. Gayle, 40 La.Ann. 286, 4 So. 3 (1888), the Supreme Court had before it a judgment which was valid when rendered but which was brought into question because of events occurring subsequent to the rendition of the judgment. The Court said:
“ * * * All these considerations lead forcibly to the conclusion, adopted by the lower court, that the judgment which recognized the property now in suit as Gayle’s homestead has since become inoperative, and that it should therefore be avoided * * * ” 40 La.Ann. at 292-293, 4 So. at 8.
Thus the Court did not annul the judgment, but rather declared it to have become inoperative — that is, of no force or effect. This was a discretionary exercise of the Court’s equitable powers, and we think the same result should be reached in this suit.
For the foregoing reasons, the judgment appealed from is recast so as to read as follows:
It is ordered, adjudged, and decreed that there be judgment herein in favor of petitioner H. R. Martens, doing business as H & H Sand & Gravel Co., against the defendant Mack Trucks, Inc., declaring that the judgment rendered herein on May 2, 1961, in favor of Mack Trucks, Inc., against petitioner H. R. Martens, doing business as H & H Sand & Gravel Co., in the amount of $8,745.49, together with interest and attorney’s fees as therein set forth, is avoided and further declaring that said judgment of May 2, 1961, is inoperative and unenforceable.
Appellant Mack Trucks, Inc., is to pay all costs of these proceedings in both courts.
Recast and- rendered.

. Writs were refused by the Supreme Court in both the Dixon and Martens cases.

. An exception of no cause of action was filed by Martens in this court on first appeal. We took cognizance of the Dixon ease and pointed out the fundamental difference.

. The consent judgment indicates on its face that Martens’ attorney was present when it was submitted and signed. This was written into the preamble of the judgment when it was prepared on March 28. The fact is not disputed that he was not present when it was submitted and signed and had no knowledge thereof until receipt of the letter of May 22.