MILLER, Judge.
Plaintiff Licoho Enterprises, Inc. appeals the trial court judgment granting the defendant Succession of Herbert Champagne’s reconventional demand, and declaring Licoho’s Orleans District Court judgment null and void and ordering it erased from the Iberia, St. Martin and Orleans Parish records. We reverse in part and amend in part.
Herbert Champagne died October IS, 1968, leaving a widow and one adopted child. He had raised six stepchildren, but only adopted the youngest. He owned the Burger Chef located in New Iberia.
In July 1967 he started having family problems. Between December 22, 1967 and January 31, 1968 he consulted Dr. Luis Alvarez, psychiatrist, at his office in New Iberia eleven times complaining that his wife and stepchildren were plotting to steal everything from him.
In December 1967 Champagne offered $2,000 cash to his personal friend William DeMahy. Champagne proposed a transfer of his property to DeMahy with the agreement that DeMahy would return it on demand. All of this was to prevent Champagne’s ' wife from receiving part of the community property in the then expected judicial separation proceedings. The parties did not separate. DeMahy knew this was wrong, but to delay matters, asked for time to think about it. He never accepted the offer.
In February 1968 Champagne employed Warren J. Moity’s detective agency to check on a shortage of some $60 at the Burger Chef. On February 22, 1968 Champagne executed a demand note payable to Warren J. Moity for $75,000 bearing 8% per annum interest and 33%% attorney’s fees. On March 3, 1968, Champagne delivered that note to Moity in exchange for a deed to some 20 acres of land situated in St. Martin Parish. Moity did not own the land but both Moity and Mr. Anthony C. D’Antonio, who represented Moity at that time, contend that they intended to convey only a mineral interest in the land. Neither was able to explain why the deed which was read in the presence of all parties did not state that only a mineral interest was conveyed. Even if the deed had conveyed a mineral interest, Moity’s mineral interest in the 20 acres had expired on June 10, 1967. It was conclusively proved that Champagne received nothing for the February 22, 1968 note which resulted in the May 6, 1968 Orleans Parish judgment against Champagne for $100,000 plus. Licoho never sought to enforce its judgment during Champagne’s lifetime.
On March 31, 1968, Champagne gave a financial statement to an Iberia Parish banker showing that he owned assets of $166,652.39 and that his net worth was $81,836.71. He did not list the $75,000 note which was then held by Moity.
Licoho was incorporated on April 2, 1968 and Moity promptly acquired all the corporation’s stock. Champagne’s note was transferred by Moity to the corporation in exchange for the stock. On April 10, 1968, without making prior demand on Champagne, Licoho filed suit against Champagne and Moity brought Champagne from Iberia to the Orleans Civil Court building so that Champagne could accept service of process. The suit did not mention that Champagne was domiciled in Iberia Parish.
On March 28, 1968, Champagne contacted Dr. Oscar Alvarez who specializes in internal medicine. He is not to be confused with the psychiatrist Dr. Luis Alvarez. Champagne was complaining of emotional difficulties and appeared quite depressed. Tr. 251. On May 2, 1968 Cham *142 pagne sought advice regarding his emotional problems and asked to be admitted to a mental institution because of his difficulties. Tr. 409. Champagne was “extremely nervous and undecided as to the correctness of his thinking.” Dr. Oscar Alvarez attempted to place Champagne at Oschner’s Foundation Hospital in New Orleans but was confronted with a three week delay. Since Champagne did not think he could wait, Dr. Alvarez hospitalized Champagne in the New Iberia Parish Hospital from May 4, 1968 until May 16, 1968. He saw plaintiff twice a day during that period. Champagne was extremely nervous, unable to unwind and especially concerned about the family problems.
On or about April 12, 1968, Champagne telephoned Dr. Luis Alvarez (the psychiatrist) to report that his wife and stepchildren were still trying to railroad him and that he would incorporate and they would get nothing. On a telephone call about May 24, 1968, Champagne reported to Dr. Luis Alvarez that “there was a good friend helping him with his corporate plans.”
Dr. Luis Alvarez diagnosed Champagne from December 1967 through his last telephone contact with him in May 1968, as schizophrenic reaction, paranoid type, chronic, severe with very poor prognosis. But Champagne would not consent to treatment from Dr. Luis Alvarez.
Neither Mrs. Champagne nor her children attempted to commit Mr. Champagne.
Before taking the May 6, 1968 judgment in Orleans Parish, Moity’s attorney, Mr. Anthony C. D’Antonio insisted that Champagne appear to testify. Moity reported that Champagne was hospitalized and the attorney telephoned the number given by Moity and testified that he talked to Champagne. The attorney understood that Champagne acknowledged owing the money to Moity; wanted Moity to have judgment and asked the attorney to tell that to the court. This the attorney did and the default judgment was signed May 6, 1968. A copy of the judgment was delivered to Moity at that time and on June 19, 1968 Moity recorded the judgment in the mortgage records of Iberia Parish.
Champagne’s widow, the administratrix of the succession, testified that she did not learn of the judgment until about November 1, 1968. She filed suit in Orleans Parish on April 29, 1969 seeking to annul the May 6, 1968 judgment. The succession pleadings in the Orleans suit are identical to the pleadings in both cases (No. 3975 and No. 3976) which are before us. Exceptions filed by Licoho were overruled in Orleans on June 4, 1970 and thereafter an answer was filed by Licoho.
Champagne’s widow had no knowledge or information about Champagne’s purchase or lease of property from Moity. She knew nothing about the note or suit in Orleans Parish until about November 1, 1968. Moity admits that he did not know where the St. Martin property was located and that he did nothing to maintain the mineral lease which absent development was to expire June 10, 1967.
At Tr. 325, the sole shareholder of Lico-ho, Mr. Moity, was asked if he thought Champagne made a good investment when he bought the mineral lease affecting some twenty acres. His answer reveals his attitude about the transaction.
“No sir, according to what you say, he may not have; but, I’ll tell you: Old Poagy didn’t make a good investment either when he lost sixty to eighty thousand too on the one before that. You just win some and you lose some; some of them, you’re lucky if you even break even. It’s just that simple.”
Moity apparently justifies the transaction because one of his other investments turned sour.
The trial judge reasoned that
“ . . . Only a mentally ill person would make such a business transaction under those circumstances unless he wanted to create a fraudulent judgment *143 or encumbrance against himself and seek to deprive his wife of her one-half (%) interest in any future separation or divorce or community settlement which he felt was imminent.
“There is no question at all in this Court’s opinion that Mr. Champagne, while in his paranoic condition, attempted a fraud upon his wife. He attempted to do this with a completely null document with the help of Licoho. Fraud vitiates everything. . . ”
The trial court declared the Orleans judgment “null and void” and ordered it can-celled and erased from the Iberia, St. Martin and Orleans Parish records.
We agree with the conclusions reached by the trial judge. But jurisdiction to set aside the May 6, 1968 Orleans judgment rests exclusively with the Orleans District Court. LSA-C.C.P. Art. 2006.
The trial court concluded that it had jurisdiction because Licoho sought to enforce the Orleans judgment in Iberia Parish. LSA-C.C.P. Art. 1031 allows re-conventional and third party demands incidental to the principal demand. But LSA-C.C.P. Art. 1036 limits this to incidental demands “ . . . if it would have had jurisdiction over the demand had it been instituted in a separate suit.”
The reconventional and third party demand here sought annulment of a judgment rendered by an Orleans District Court. The Iberia court would not have jurisdiction over a separate suit to annul the Orleans judgment. LSA-C.C.P. Art. 2006 states:
“An action to annul a judgment must be brought in the trial court, even though the judgment sought to be annulled may have been affirmed on appeal, or even rendered by the appellate court.”
The venue provided in LSA-C.C.P. Art. 2006 may not be waived. LSA-C.C.P. Art. 44.
In Pontchartrain Park Homes v. Sewerage and Water Board, 246 La. 893, 168 So.2d 595 (1964), the applicable law was set forth as follows :
“Since the prior judgment involved herein was at the most merely voidable and not absolutely void (it was not attended with any vices of form and the court was clearly vested with jurisdiction of the subject matter and of the parties), and there having been no direct attack made by this defendant, it must be given full force and effect.”
The Orleans court which rendered the judgment attacked in the instant case, had jurisdiction of the subject matter and of the parties. There were no vices of form appearing on that judgment.
Since the grounds for annulment sought herein were classified as “voidable” and not “void” (Board of Commissioners v. Hollybrook Land Company, 191 So.2d 724 [La.App. 2 Cir. 1966], and cases cited therein), the action to annul the judgment must be decided by the Orleans court.
Although the Iberia court did not have jurisdiction to annul the judgment obtained in Orleans, Iberia has jurisdiction to determine whether or not the administra-trix was required to list debts of the succession. LSA-C.C. Art. 2811. See also Introduction to Book VI, LSA-C.C.P. concerning the jurisdictional nature of venue in the succession procedure of Louisiana. The converse is also true: just as the trial court has jurisdiction and power to hear and recognize claims against the succession, it also has the power to hear and refuse to recognize claims which are disproved. The succession representative is required to oppose improper claims sought to be enforced against the succession. LSA-C.C.P. Art. 3249. Where, as here, counsel for the administratrix establishes fraud on the part of a plaintiff seeking to recognize its claim, the trial court has the right and duty to recognize and expose the fraud.
*144 In this peculiar fact situation the trial court found itself whipsawed between the alternative courses of action available under the law. It could not, consonant with a concern for justice, recognize the fraudulently obtained judgment as a claim against the succession.
Lawmakers can not prescribe a rule for every possible situation. If they were to attempt to anticipate every remote and speculative hypothetical situation in their labors, the law books would be so complex and voluminous as to be incomprehensible mazes. The Legislature, in enacting the Code of Civil Procedure, had to rely upon the courts to fairly use the Code to dispense justice and to interpret the law in the context within which it was enacted. This fact has been recognized for many years.
Our Civil Code begins with this premise:
“Art. 1. Law is a solemn expression of legislative will.
“Art. 2. It orders and permits and forbids, it announces rewards and punishments, its provisions generally relate not to solitary or singular cases, but to what passes in the ordinary course of affairs.”
The situation before us today does not occur in the ordinary course of affairs. There have been instances in which fraud was practiced either upon the parties or the court in obtaining judgments. Although courts are not immune from trickery, cases of such blatant dishonesty seldom reach this court.
The redactors of the Civil Code no doubt thought they had adequately covered this area when they imposed the sanction of nullity upon certain simulated acts intended to defraud third persons. But rules for obtaining and enforcing judgments were not written with collusively obtained default judgments in mind.
The thought of parties defrauding a court in order to deprive one party’s spouse and child of their property is not only foreign to the origins and structure of our system; it is contrary to common decency and honesty.
The Fourth Circuit refused to recognize a validly obtained judgment when doing so would have defeated the ends of justice. Mack Trucks, Inc. v. Martens, 192 So.2d 879 (La.App. 4 Cir. 1966). The court’s reasoning at 192 So.2d 883 and 884 is pertinent to the facts before us.
“Although Martens sought in this suit to obtain a judicial declaration of nullity, we are not limited to considering that remedy alone. On the contrary, our procedural law requires us to grant equitable relief when necessary to avoid injustice. LSA-C.C.P. art. 862 provides:
‘Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.’
In addition LSA-C.C.P. art. 2164 requires appellate courts to ‘render any judgment which is just, legal, and proper upon the record on appeal.’
“In reaching a decision as to what relief to grant Martens, we have searched our jurisprudence for cases containing a similar problem. Several decisions involving Code of Practice Article 607, the predecessor to LSA-C.C.P. art. 2004, indicate a judicial willingness to grant equitable relief against judgments where adherence to those judgments would be manifestly unjust. Typical of these cases is the language in Succession of Gilmore, 157 La. 130, 133, 102 So. 94, 95 (1924):
‘It is true that said petition does not charge “fraud” or the ill practices specifically enumerated in the article of the Code of Practice above cited. The remedy given by said article to annul *145 judgments, however, is not restrictive. The courts of this state will not hesitate to afford relief against judgments, irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable. Our courts will follow the general principles of equity jurisprudence applied by the equity courts of the other states of this country in actions of this character. Lazarus v. McGuirk, 42 La.Ann. [194] 200, 8 So. 253; City of New Orleans v. Le Bourgeois, 50 La.Ann. [591,] 592, 23 So. 542.’
See also Alonso v. Bowers, 222 La. 1093, 64 So.2d 443 (1953); First Nat. Life Ins. Co. v. Bell, 174 La. 692, 141 So. 379 (1932); Tarver v. Quinn, 149 La. 368, 89 So. 216 (1921); Engeran v. Consolidated Companies, Inc., 147 So. 743 (La.App. 1st Cir. 1933). We are aware of the fact that in all of these cases fraud or ill practice was alleged and that the equitable remedy accorded in those cases where the fraud or ill practice was established was a nullification of the judgment. Since we have already stated that the judgment before us cannot be annulled we do not cite the Gilmore line of cases as controlling the result of this sidt, but point them out simply to show that our courts will exercise their equity powers to avoid unjust consequences which a judgment might have.'
“[4] In Denis v. Gayle, 40 La.Ann. 286, 4 So. 3 (1888), the Supreme Court had before it a judgment which was valid when rendered but which was brought into question because of events occurring subsequent to the rendition of the judgment. The Court said:
‘ * * * All these considerations lead forcibly to the conclusion, adopted by the lower court, that the judgment which recognized the property now in suit as Gayle’s homestead has since become inoperative, and that it should therefore be avoided * * *’ 40 La.Ann. at 292-293, 4 So. at 8.
Thus the Court did not annul the judgment, but rather declared it to have become inoperative — that is, of no force or effect. This was a discretionary exercise of the Court’s equitable powers, and we think the same result should be reached in this suit.” (Emphasis added.) 192 So.2d at 883, 884.
Mack Trucks, Inc. v. Martens, supra, is not entirely in point because it originated in the court which rendered the original judgment. Nevertheless, it is significant to us in that it recognizes that a court may exercise its inherent power to do justice.
Courts will not be used as tools by persons seeking to defraud innocent parties by enforcing collusively obtained default judgments.
Where as here there is no express law providing a just remedy, we turn for guidance to LSA-C.C. Art. 21 and to LSA-C.C.P. Art. 2164. They provide that:
“Art. 21. In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent.”
“Art. 2164. The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. . . ”
Relying solely on principles of equity and justice and the peculiar facts of this case, we refuse to recognize the Orleans District Court’s original judgment. Mack Trucks, Inc. v. Martens, 192 So.2d 879 (La.App. 4 Cir. 1966). Our holding is limited to the peculiar facts of this case.
We reverse the trial court judgment to the extent that it annulled and ordered canceled the Orleans District Court judg *146 ment of May 6, 1968. The trial court judgment is amended to read as follows:
It is ordered, adjudged, and decreed that: On the main demand, judgment is rendered in favor of defendant, Succession of Herbert Champagne and against plaintiff Licoho Enterprises, Inc., rejecting plaintiff’s demands. The Orleans May 6, 1968 judgment in suit number 476789 is inoperative and unenforceable. All costs of court at trial and on appeal are taxed to plaintiff appellant.
Reversed in part; in part, amended.