JONES, Justice.
Defendant Blue Cross and Blue Shield of Alabama (“BC/BS”) appeals from the trial court’s denial of its Rule 60(b), A.R.Civ.P., motion for relief from a judgment entered in favor of the plaintiffs. We affirm.
THE FACTS
This appeal began as a suit filed by Guy G. Bigger and Michelle Bigger against BC/BS, Rural Health of Alabama, Alabama Farm Bureau Services, Inc., and fictitiously named parties. The plaintiffs claimed damages resulting from an alleged wrongful failure to pay approximately $10,-000 in insurance benefits on behalf of Michelle Bigger. On March 4, 1987, a joint stipulation of dismissal, based on a settlement agreement, was filed with the trial court. The trial court then entered an order accepting and approving the stipulation of dismissal as to all defendants. This order of dismissal was dated March 4,1987, and judgment was entered thereon.
On July 2, 1987, defendant BC/BS filed with the trial court a Rule 60(b), A.R. Civ.P., motion for relief from the judgment, with several of Michelle Bigger’s medical records attached in support of the motion. In that motion, BC/BS requested that the trial court set aside the judgment based on the stipulation of dismissal/settlement agreement, alleging that “the settlement agreement [was] obtained by fraud, misrepresentation, or other misconduct of an adverse party.”
BC/BS contended that it entered the settlement/dismissal agreement based, in part, on representations by the plaintiffs that Michelle Bigger was “not currently suffering from any known illness, disease, or affliction of any type and [was] in good health.” The plaintiffs had represented that Michelle Bigger knew of “no current existing condition that would require medical attention in the future and that Michelle Bigger has not been advised that she currently suffers from any disease, affliction or medical problem which will require medical attention in the future.”
The plaintiffs, in the settlement agreement, had also stated that they understood both that BC/BS was relying on their representations as to Michelle’s health and that their representations were conditions of the agreement to add Michelle as an insured under Guy’s policy. As evidence of the alleged fraudulent nature of these representations, BC/BS pointed out that 11 days after the execution of the settle-. ment/dismissal agreement, Michelle Bigger was involuntarily admitted by her husband to Charter Pines Recovery Center for treatment for alcoholism and substance abuse after 10 years of alcohol and drug abuse.
In response to BC/BS’s motion for relief from judgment, the plaintiffs filed a motion in opposition, supported by the affidavit of *7 Michelle’s doctor at Charter Pines. In his affidavit, Dr. John R. Fox stated that Michelle “gave no history of treatment for alcoholism or drug addiction. In fact, she said she had never been treated for alcoholism or drug addiction. I am not aware of any illness or disease from which Michelle suffered other than the alcoholism which we diagnosed. I am not aware Michelle had ever been diagnosed as having alcoholism or drug addiction prior to her admission.”
Dr. Fox went on to state: “While Michelle gave a history of alcohol and/or drug use, use or abuse, alone, does not constitute a diagnosis of the disease of chemical dependency. In fact, denial is that aspect of the disease of chemical dependency which tells a person he does not have the disease. It is the inability of the individual to relate to the reality of his chemical dependency. Accordingly, such a person could believe he or she was not suffering from any known illness. As stated before, denial is an aspect of the disease.”
Michelle Bigger submitted her affidavit in support of the plaintiffs’ opposition to BC/BS’s motion for relief from judgment, in which she stated:
“At the time I executed that [settlement/dismissal] agreement I truly did not know of any illness, disease or affliction from which I was suffering.
“On or about March 11, 1987, I was admitted to Charter Pines Recovery Center for treatment. I was admitted to that facility upon the insistence of my husband. I did not do so voluntarily. It is my understanding that I was treated at Charter Pines for possible chemical dependency. I drank alcoholic beverages and occasionally used drugs for several years prior to my admission to Charter Pines. At no time prior to my admission did I ever believe that my alcohol and/or drug use was to a degree or extent to be deemed a problem. It was only after I was admitted to Charter Pines and received treatment there under the care of Dr. John R. Fox that I understood that I was suffering from the disease of alcoholism.
“The diagnosis of alcoholism which was rendered by Dr. Fox was the first indication I had ever had that my substance use and/or abuse constituted the disease of alcoholism and/or chemical dependency. I had never previously received such a diagnosis from any treating physician. Accordingly, at the time I executed the settlement agreement in this case, I did not believe that I was suffering from any illness, condition, disease or affliction.”
The trial court took BC/BS’s motion for relief from judgment under submission, and the parties filed briefs in support of their contentions. On September 16, 1987, BC/BS moved the trial court to withhold its ruling on BC/BS’s Rule 60(b) motion and to allow BC/BS to take the deposition of Guy Bigger. Unaware of this latest motion, the trial court denied BC/BS’s Rule 60(b) motion on September 23, 1987. On October 2, 1987, BC/BS filed a motion requesting a rehearing on the denial of its Rule 60(b) motion and requesting that it be allowed to complete the record in the case by deposing plaintiff Guy Bigger. This motion was granted on October 9, 1987. On October 13, 1987, BC/BS filed a motion asking that it be allowed to require the Charter Pines Recovery Center to produce all records of the treatment of plaintiff Michelle Bigger. This motion was granted.
The deposition of Guy Bigger and the records of the Charter Pines Recovery Center were, on the motion of BC/BS, filed as exhibits in this action and became a part of the court record. Dr. John Fox made the following observations in Michelle’s “medical discharge summary”:
“ADMISSION DIAGNOSIS:
1) Alcoholism
2) Acute alcohol withdrawal
“DISCHARGE DIAGNOSIS: Same
“HISTORY OF PRESENT ILLNESS: The patient is a 24 year old white female who says that she has been drinking since she was 14. Admitting to 6-8 cans of beer a day. She has been drinking Vodka at night. Also takes Valium *8 which she buys on the street, more recently.”
Cindy Hornsby filed a “Counselor’s Discharge Summary” on the day Michelle was released from Charter Pines. Ms. Hornsby states, in part:
“This is a 24 year old married female who presents with a 10 year history of alcohol and polydrug abuse. The patient was brought to this facility by her spouse for treatment with her drug abuse problems. Prior to admission the patient had been separated from her spouse. She reports that she began drinking at the age of 14 and during this 10 year period had used cocaine, marijuana and various other drugs. At the time of admission the patient was angry and belligerent making physical threats of harm to her spouse and staff. She reportedly was drinking anywhere from 8-10 beers a day and also drinking Vodka. There were reports of blackouts and increased tolerance....”
The report of Michelle’s history and physical examination was filed by the attending physician, Dr. John Fox. In that report, Dr. Fox observed:
“HISTORY OF PRESENT ILLNESS: This is a 24 year old white female who says that she has been drinking since age 14. Admits to 6-8 cans of beer a day and then drinks Vodka at night. She also takes Valium which she buys on the street. She says that she has had none in a week. She states that around [March 1, 1987,] she took 35 [Valium] from Sunday till Tuesday. She says that she uses Valium when she feels depressed. ... She states that on [March 1, 1987,] she intentionally wrecked her car trying to kill herself. She says that she does not want to be here and that she does not want to stop drinking. “FAMILY HISTORY: She states that her father is a ‘reformed alcoholic’ who has multiple medical problems and takes medicine to keep him from drinking. She lives with her husband who she states is a heavy drinker.
[[Image here]]
“IMPRESSION:
1) Alcoholism advanced for age.
2) Acute alcohol withdrawal.
“PLAN: The patient needs medically supervised detoxification followed by residential treatment.”
The Charter Pines “Nursing Assessment and Interview” form for Michelle was completed by M. Barefoot, R.N. That document contains both the nurse’s medical assessment of Michelle and the answers Michelle gave to interview questions posed by the nurse:

“Initial Assessment:

[[Image here]]
“Is patient currently intoxicated? Yes
[[Image here]]

“Interview:

“1. Presenting problems:
“A. Why were you admitted to this facility? Has been drinking constantly for past 12 days.
“B. Referral source. Husband — former patient.
[[Image here]]
“8. How often do you drink alcoholic beverages? Every day.
“9. What kinds of alcoholic beverages do you drink and in what amount? Beer in day — vodka at night.
“10. How long has this been your pattern of drinking? 1⅛ years in this pattern — heavy abuse for last 6 years.
“11. What is the longest period of time you’ve ever gone without drinking alcoholic beverages or using mind altering drugs? 2-3 days.
“12. How old were you when you started drinking regularly? 14-15 years old — 1978.
“13. Do you feel you have a drinking problem? Yes.
[[Image here]]
“18. Has your use of alcohol and/or drugs created problems for you in any of the following areas? With spouse Yes With family Yes With friends No On the job No With children Yes
*9 “19. Have you ever been injured because of alcohol and/or drug use? Yes In fights? No Auto accident? Yes Accidental falls? Yes
[[Image here]]
“22. Have you every experienced loss of memory (blackouts) while using alcohol and/or drugs? Yes”
The deposition of Guy Bigger reflects that, while Mr. Bigger knew that his wife consumed alcoholic beverages, he did not view her drinking as a problem. He was unaware of his wife’s blackouts and never noticed any increased tolerance for alcohol on her part. Additionally, he was unaware of her drug use or abuse other than that in the past she had smoked marijuana.
BC/BS’s motion for rehearing/reconsideration, supported by the evidence obtained from the foregoing Charter Pines records and from the deposition of Guy Bigger, was denied. The trial court ordered that the cause be dismissed with prejudice, with costs taxed to BC/BS and the other defendants.
THE ISSUE
The only issue presented by this appeal is whether the judicial discretion given trial courts in deciding to grant or deny a Rule 60(b) motion was abused by the trial court in this case in denying BC/BS’s Rule 60(b) motion on the ground of fraud.[1]
THE HOLDING
Rule 60(b), A.R.Civ.P., provides, in part:
“(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation.... This rule does not limit the power of a court to entertain an independent action within a reasonable time and not to exceed three years after the entry of the judgment (or such additional time as is given by [§§ 6-2-3 and 6-2-8,] Code of Ala.) to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court....”
The standard of appellate review of a trial court’s denial of a Rule 60(b) motion is whether the trial court abused its discretion (see Ex parte Lang, 500 So.2d 3 (Ala.1986)), based on the grounds and on the supporting matters submitted by the movant. Robbins v. Smith, 495 So.2d 577 (Ala.1986); Lockhart v. Phenix City Investment Co., 488 So.2d 1353 (Ala.1986); and Marsh v. Marsh, 338 So.2d 422 (Ala.Civ.App.1976). This discretion, however, has been described by this Court as “broad” (Jenkins v. American Cast Iron Pipe Co., 454 So.2d 969, 971 (Ala.1984)), thus increasing the burden on the movant to show, not only that there were misrepresentations in the testimony, but also that the movant was not negligent in remaining ignorant of the alleged fraud during the time allowed for moving for a new trial. See Sharp v. Edwards, 203 Ala. 205, 82 So. 455 (1919).
In ruling on an appeal from a denial of a Rule 60(b) motion attack upon a judgment, the reviewing court, like the trial court, has the discretion “to balance the desire to remedy injustice against the need for finali *10 ty of judgments” (Raine v. First Western Bank, 362 So.2d 846 at 848 (Ala.1978)), keeping in mind that Rule 60(b) is an extreme remedy for exceptional circumstances. Snowden v. United Steelworkers, 435 So.2d 62 (Ala.1983).
Understandably, the circumstances of a prospective insured’s history of alcohol and drug use/abuse are facts upon which the prospective insurer relies in making a determination of whether to enter a contract of insurance — especially a contract of health insurance. Such facts were the goal of the inquiry made by BC/BS in its attempt to investigate Guy Biggers — and his dependents — as prospective insureds. However, Guy Biggers answered “no” to the BC/BS question of whether the prospective insureds had a history of alcohol or drug dependency, as did Michelle. Further, although BC/BS introduced the Charter Pines medical records in support of the claim of a history of alcohol and drug abuse by Michelle, the trial court also had before it the affidavit of Michelle’s attending physician at Charter Pines who testified that a symptom of such substance abuse is the patient’s denial, to herself and to her family, that she has a problem with alcohol and/or drugs.
In light of the “broad” discretion afforded the trial court in ruling on Rule 60(b) motions, the evidence before the trial court in the instant case, and the desire to balance the need for finality of judgments against the need for fairness, we can not say that the trial court was “palpably wrong” in denying BC/BS’s motion. Because we find no error in the trial court’s ruling, the judgment appealed from is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and SHORES, ADAMS and STEAGALL, JJ., concur.

. "On the question of whether the order appealed from [the trial court’s denial of the defendants’ Rule 60(b) motion] was an appealable order that issue was decided in Cockrell v. World’s Finest Chocolate Co., Inc., 349 So.2d 1117 (Ala.1977). . . . It is equally well-settled that the denial of a 60(b) motion does not bring up for review on appeal the correctness of the judgment which the movant seeks to set aside, but is limited to deciding the correctness of the order from which he appeals. Cockrell, supra; Coosa Marble Co., Inc. v. Whetstone, 294 Ala. 408, 318 So.2d 271 (1975). . . .” Raine v. First Western Bank, 362 So.2d 846, 848 (Ala.1978).