I disagree with the majority's statement of the issues and the characterization of the dissenting Justices' views on other issues not addressed. This case does not present a "narrow policy call" of no precedential value, but an important question as to the circumstances under which a Rule 60(b)(3), A.R.Civ.P., motion for relief from judgment should be granted due to the "fraud . . ., misrepresentation, or other misconduct of an adverse party."
On January 13, 1981, Dr. Albert D. Pacifico performed cardiac by-pass surgery on Dr. John M. Jackson. Dr. Jackson has never alleged that there was any deficiency in Dr. Pacifico's performance of the surgery itself. Rather, the alleged malpractice was in the attachment of a stopcock for an arterial line to Dr. Jackson's right wrist by two stitches in the skin. Dr. Jackson alleged that those two stitches damaged the median nerve in his wrist and thereby caused loss of sensation in and control of his thumb, forefinger, and middle finger in his right hand. Dr. Pacifico offered substantial credible evidence that the median nerve is too deep within the wrist and protected by too many layers of tissue to have been damaged by the stitches; that Dr. Jackson's descriptions of his alleged injury have varied over the years and have, for the most part, been inconsistent with the theory of causation that he now alleges; and that any of several other causes, not including any malpractice by Dr. Pacifico, could have caused the alleged loss of sensation and control in Dr. Jackson's right hand.
Thus, there was a significant question of the sufficiency of the evidence as to whether Dr. Pacifico had committed any malpractice that had caused any injury to Dr. Jackson. On original submission of this appeal, the Court voted not to reverse the judgment on that basis, however, because this case was tried under the scintilla rule and because of the presumptions in favor of a jury's verdict and a judgment entered thereon. The issue on which the Court originally reversed and which is presented on this rehearing is whether the trial court erred in not granting Dr. Pacifico's motion for relief from judgment based on evidence that Dr. Jackson was performing surgeries that he had told the jury he could not perform due to the alleged injury to his median nerve.
The record developed at the hearing on the post-trial motions makes it clear that Dr. Jackson misrepresented to the jury his inability to perform surgery. That inability to perform surgery was the aspect of his alleged injury that supported by far the greatest portion of his damages. Dr. Jackson's misrepresentations came to light before the judgment was final. The trial court could have and should have granted Dr. Pacifico's Rule 60(b) motion for relief from the judgment and ordered a new trial.
Dr. Pacifico's motion for judgment notwithstanding the verdict or, in the alternative, a new trial, included as a ground that the verdict "was based on testimony that was not true." A hearing was held on that motion on February 17, 1988, and on February 24, while the motion for J.N.O.V. or new trial was still pending, Dr. Pacifico filed a motion for relief from the judgment pursuant to Rule 60(b), A.R.Civ.P. That motion listed grounds, including allegations that the verdict was the result of mistake, fraud, misrepresentation, or "misconduct *Page 182 
on the part of the plaintiff," based on the evidence that was brought forth at the hearing regarding surgeries that Dr. Jackson had performed both before and after the trial. The trial court denied both of those motions without setting forth its reasoning, but the portion of the order denying the request for a remittitur, quoted in the majority opinion, shows that the court, in holding that the evidence supported the damages, relied on Dr. Jackson's testimony that he could not perform major surgery.
The very basis for the award of damages has been seriously called into question and, in all probability, a jury in possession of the true facts might make a substantially smaller damages award and might even return a verdict for Dr. Pacifico.
Dr. Jackson testified at trial:
 "Q. By the end of 1981, December of '81, what was your situation with regard to your practice?
 "A. I had quit doing all major surgery and was doing basically an office practice and office surgery.
 "Q. And since December of 1981, have you performed any surgery?
 "A. Yes, sir, I have. Again, I have performed minor surgical procedures and primarily procedures in the office."
 "Q. Just tell us a little bit about what you have been doing since '81. What sort of medical practice have you had?
 "A. I do a general office practice, and I do minor surgery, taking off moles, skin cancers. I'll do a breast biopsy under local anesthesia in the office. I do needle biopsies. I do endoscopies.
 "Q. Are you telling us then that whatever you have made you have made as a family practitioner and not as a surgeon?
 "A. Yes, sir, other than the procedures that I have mentioned, the endoscopies and that type thing."
At trial, Dr. Jackson was also asked, "What sort of surgical procedures have you stopped doing?" He answered, "Procedures such as hernias, appendectomies, gall bladder, stomachs, colons, neck surgery, thyroids, this type of procedure." The trial began on December 1, 1987. On July 21, 1987, Dr. Jackson had performed an incisional hernia repair that required general anesthesia and required 60 minutes in the operating room. On August 3, 1987, he had performed an umbilical hernia repair. In his deposition, he had also listed orchiectomies as surgeries that he could not perform. On September 24, 1987, he had performed an orchiectomy.
In addition to those operations he had performed prior to trial, Dr. Jackson performed several operations shortly after trial that were also the very type of operation that he had described as major surgery that he could not perform. On December 18, 1987, 11 days after the jury returned its verdict, Dr. Jackson performed another hernia operation. On December 22, 1987, he amputated a patient's leg; he had listed "amputations" in his deposition as a type of major surgery that he could not perform. On February 4, 1988, he performed a gall bladder operation, although it appears that he performed that operation in conjunction with another surgeon. Other evidence was introduced at the hearing tending to show that both the surgical privileges granted by the hospital to Dr. Jackson and his actual surgery practice were more extensive than he had led the jury to believe. There was also evidence, which Dr. Jackson had not produced, showing that he had been injured in 1985. That injury might well have caused or contributed to whatever difficulty he had in performing surgery.
Counsel for Dr. Jackson argues that the above evidence was merely impeaching and so would not support a motion for new trial under the test set forth in such cases as Shepherd v.Southern Ry., 288 Ala. 50, 256 So.2d 883 (1970). This evidence is not merely a collateral attack on the veracity of a witness whose testimony was offered by one party, however; it is substantive evidence directly contradicting the plaintiff's testimony regarding his alleged damages. Further, the rule against granting a new trial based on impeachment testimony is qualified by the statement in Cooke v. Embry, 219 Ala. 623,627, 123 So. 27, 30 (1929), that "unless the case is so gross as *Page 183 
to make it probable that the verdict was obtained by perjury, a new trial will not be granted on evidence going to the impeachment of a witness."
Most of the evidence cited above came from the operating room logs of the Eufaula hospital where Dr. Jackson performed the surgeries; those logs were introduced and supplemented by the testimony of the administrator of the hospital and the nurse who supervised the operating room. Dr. Pacifico's counsel had filed a subpoena duces tecum for the operating room logs with the court on November 16, 1987, about two weeks before trial. The court issued the subpoena, and there is some evidence that the sheriff served it on the hospital, although the exhibits and the hearing transcript are inconclusive as to service. The administrator and the operating room supervisor testified at the hearing that they did not recall having seen the subpoena. The failure of Dr. Pacifico's counsel to pursue the matter further before or during trial might be construed as enough of a lack of due diligence to support the denial of the motion for new trial under the test set forth in such cases as Hall v.Mazzone, 486 So.2d 408 (Ala. 1986); Welch v. Jones,470 So.2d 1103 (Ala. 1985); and Forest Investment Corp. v. CommercialCredit Corp., 271 Ala. 8, 122 So.2d 131 (1960).
That lack of tenacity in pursuing the operating room logs is not a basis for denying the Rule 60(b) motion, however. Dr. Pacifico's counsel had no reason to suspect prior to or during trial that Dr. Jackson was actually performing surgeries that he had said he could not perform. Dr. Pacifico defended vigorously on his evidence that he had not committed any malpractice and that Dr. Jackson's alleged injury was caused by any of several other identified possible causes, and none of the discovery matters before us would have indicated to Dr. Pacifico that Dr. Jackson had misrepresented the extent of his alleged injury; therefore, his lack of suspicion regarding Dr. Jackson's claimed inability to perform major surgery was reasonable under the circumstances. A Rule 60(b)(3) motion for relief from judgment for fraud, misrepresentation, or other misconduct of an adverse party does not necessarily carry a requirement that the moving party must have been persistent in attempting to discover an unsuspected fraud prior to trial. Certainly, the post-trial surgeries form a basis for the Rule 60(b) motion with no requirement of having exercised due diligence to discover them before trial, and they were discovered and the motion was filed promptly after the trial, well within the four-month period for a Rule 60(b)(3) motion, and, in fact, while the motion for new trial was still pending.
A trial court may grant relief from a judgment under Rule 60(b)(3) for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Such relief is discretionary with the trial court,
 "and in exercising this discretion [the courts] attempt to balance the desire to remedy injustice against the need for finality of judgments. See Committee Comments, Rule 60, ARCP; Wright 
Miller, [Federal Practice and Procedure: Civil] § 2857."
Raine v. First Western Bank, 362 So.2d 846, 848 (Ala. 1978);Blue Cross Blue Shield of Alabama v. Bigger, 538 So.2d 5
(Ala. 1988). The need for finality of judgments is not a strong factor here, because the motion was made before the judgmentwas final, and that need is certainly overcome by the need to remedy the injustice of the verdict rendered without the facts about Dr. Jackson's ability to perform surgery that came to light at the hearing on the post-trial motions.
For the foregoing reasons, I would reverse the denial of the motion for relief from judgment and remand the cause with instructions for the trial court to order a new trial.
SHORES and STEAGALL, JJ., concur. *Page 184