ROGERS, J.
 

 This is a suit in nullity which was dismissed ‘on an exception of no cause of action.
 

 Mrs. Annie Fallow Bell, the appellee, while in the employ of the First National Life Insurance Company, the appellant, received serious personal injuries for which she brought suit. The district court awarded her $5,000, and the insurance company appealed to the Court of Appeal for the parish of Orleans.
 

 Pending its appeal, the insurance company changed lawyers, through whom the present action of nullity was instituted. On the day the suit was filed, the insurance company ruled Mrs. Bell into the appellate court to show cause why the personal injury suit should not be remanded or be continued until after the disposition of the suit in nullity. This rule was discharged, and the insurance company’s application for a review of the decision of the Court of Appeal was this day denied. See No. 31,684 of our docket.1 Previously, the
 
 insurance company
 
 had unsuccessfully applied to this court for a review under its supervisory jurisdiction of the decision of the judge of the district court dismissing the suit in nullity on defendant’s exception. See opinion and judgment of this court entered and filed February 1,1932,174 La. 164,140 So. 11. The correctness vel non of the judgment of the district court is now presented on this appeal.
 

 Plaintiff alleges that the amount of the judgment which it seeks to annul is largely in excess of what it should be, regardless of plaintiff’s ultimate liability, due to the fraud and ill practices of Mrs. Bell, in pretending that “she was unable to rise from her chair in the courtroom without assistance, was unable to take the witness chair, but was ob-liged to sit in a chair placed for her convenience near the stenographer;” all of which was calculated and intended to falsely and fraudulently impel the court to believe, and hold, that she was permanently disabled, when in fact she had completely recovered from her injuries; that, in order to further impose upon the court, and to perpetrate a fraud upon plaintiff, Mrs. Bell failed to call her attending physician as a witness, but relied for proof of her permanent disability upon the testimony of the physician who had attended her while she was confined in the Charity Hospital, at New Orleans, and had not seen her since her discharge, more than sixteen months before, but who, in all good faith, testified that the great preponderance
 
 *695
 
 of probabilities was that Mrs. Bell would be a helpless cripple for life, unable to walk without crutches, as the result of her injuries.
 

 Plaintiff alleges that the fraud and ill practices in question are not patent on the face of the record; that they were only discovered subsequent to the lodging of its appeal, and could not have been discovered sooner, notwithstanding the exercise of due diligence on its part, because of the nature of the fraud and ill practices and the continued concealment of Mrs. Bell of her true physical condition; that plaintiff has not been guilty of any laches, and the enforcement of the judgment of which it complains would be contrary to good conscience, equity, and justice.
 

 It is the uniform jurisprudence in this state that, when the nullity of a judgment i» demanded on equitable grounds, the plaintiff in nullity must allege and prove: First, that he has not been guilty of laches; second, that it would be against good conscience to enforce the judgment attacked. Tarver v. Quinn, 149 La. 368, 89 So. 216; and authorities therein cited.
 

 Therefore, the question to be determined is, Does plaintiff’s petition, construed with reference to the personal injury suit to which it refers, present a case which would make it against good conscience to execute the judgment, matter of which plaintiff could not avail itself or was prevented by fraud and the absence of laches or negligence destroying his right to relief?
 

 The rec.ord in the personal injury suit, which is referred to in the petition in this suit, shows that Mrs. Bell, a woman of approximately seventy years of age, was injured on December 12, 1929. Her injury consisted of the fracture of the neck of the right femur, resulting in her confinement in the Charity Hospital until February 26, 1930, a period of about two and one-half months. During all this time she was in charge of Dr. E. D. Fennel', one of the leading physicians and surgeons of New Orleans, and his assistants. Her injured leg was enveloped in a plaster cast, causing her much pain and discomfort. And as a result of her confinement to bed, associated with the shock from her injury, she developed a severe case of pneumonia.
 

 Mrs. Bell filed her suit on July 29, 1930,. and about two months later defendant filed its answer. The case came up for trial on March 30, 1931, and again on June 9, 1931.. Judgment was rendered on July 9, 1931, and signed on July 15, 1931. Defendant’s appeal was lodged in the Court of Appeal on July 23, 1931. This suit in nullity was filed on November 27, 1931.
 

 As we construe the allegations of the petition in nullity, they amount to nothing more-than a charge that Mrs. Bell exaggerated, the effect of her injury by appearing in the-courtroom on crutches and by failing to sit in the witness chair and by not rising from-her chair without assistance.
 

 But the acts complained of were performed openly, not secretly, and were apparent to-the representatives of the insurance company and all other observers. The insurance company was represented by experienced counsel,, who was assisted in the trial of the case by its president, who was himself experienced in the business of health and accident insurance.
 

 
 *697
 
 At no timé during the long delay elapsing between the filing of the suit and its trial, nor on the trial itself, notwithstanding Dr., Fenner testified that she would in all probability be a cripple for life and have to walk with the aid of crutches, did the insurance company demand a physical examination of Mrs. Bell, and there is no allegation to that effect in its petition herein.
 

 Plaintiff’s complaint is that Mrs. Bell was not permanently injured, and the record shows that it took plaintiff a period of approximately twenty-one months and a half after the accident, and some six months after the judgment for damages was rendered, to ascertain that fact, if it be a fact.
 

 But at the very outset of the trial of the personal injury suit the hospital records were admitted as showing the éxtent of Mrs. Bell’s injuries; in addition to which the following express admission was made, viz.: “It is admitted that Mrs. Bell, the plaintiff in this case, suffered the injuries set out in her petition, and that the injuries are permanent in their nature.”
 

 It is true that the judge of the district court, in awarding damages to Mrs. Bell, referred to the fact that she was unable to rise from her chair without assistance, and that she was unable to take the witness stand, and was obliged to sit in a chair placed near the stenographer, but it is also true that he found that her injuries were “admittedly very serious,” and it is apparent from his remarks that he was influenced in fixing the amount of the damages by the testimony of Dr. Fenner, which was not disputed by the insurance company, that in all probability Mrs. Bell will be a cripple for the balance of her life. This view of the record is supported by the reasons furnished by the judge of the district court, in sustaining the exception of defendant in this action in nullity. After referring to the fact that his judgment in the personal injury suit is on appeal, he says: “I am confident that the Court of Appeal will find sufficient evidence in the record to justify my findings. On the trial of the case competent counsel for the insurance company practically admitted the serious injuries of Mrs. Bell, and adduced no evidence whatever on that point, leaving the testimony of Dr. E. D. Fenner unimpeached and uncontradicted.” In other words, the judge himself shows that his judgment was based on the undisputed medical testimony in the record and not on any other fact or circumstance.
 

 If the insurance company was not satisfied that the injuries of Mrs. Bell were of a permanent nature, it was its duty to ascertain and establish that fact on the trial of the case. This it failed to do, and we do not think that it ought to be permitted to have the case reopened at this late date to engage in a retrial of that issue.
 

 Plaintiff argues, but does not allege, that a medical examination of Mrs. Bell or N-ray photographs of her injured hip would not have been helpful on the trial of the case, because neither would have disclosed her true physical condition, for which the only real test were the subjective symptoms exhibited by Mrs. Bell herself. But it is passing strange that plaintiff was able to detect within six months after the judgment was rendered against it that Mrs. Bell was feigning the subjective symptoms, whereas dur
 
 *699
 
 ing the sixteen months elapsing between the date of Mrs. Bell’s injury and the trial of the case in the district court plaintiff was unable to detect that she was simulating a physical condition which had no existence in fact. The inescapable inference is that plaintiff exhibited far more diligence after than before judgment was rendered to minimize the injury suffered by Mrs. Bell.
 

 Plaintiff makes the broad allegation wholly on information that Mrs. Bell was advised by the physician (name not stated) who attended her after her discharge from the hospital that he could not testify that she had not completely recovered from her injury, and that she perpetrated a fraud on plaintiff by her failure to place the physician on the witness stand.
 

 But Mrs. Bell did not allege in her petition in the personal injury suit that she was under the care of any physician after her discharge from the hospital, although she did allege that at the time of her injury she was ordered by Dr. Murphy, her private physician, to be taken to the Charity Hospital for treatment. Nevertheless, neither Dr. Murphy nor any other physician was shown to have attended Mrs. Bell after she left the hospital; the parties litigant being well satisfied, as shown by the record, to stand on the hospital records and the testimony of Dr. Fenner as to the nature and effect of Mrs. Bell’s injury.
 

 If a judgment could be annulled on the showing made by plaintiff, litigation would be endless. Another judgment in favor-of Mrs. Bell could be annulled on allegations of newly discovered evidence, and so on to the end of time. If an unsuccessful litigant were permitted to attack a judgment as fraudulent on the ground that his opponent failed to disclose certain facts within his knowledge, which by the exercise of reasonable diligence the unsuccessful litigant could have aseer-! tained for himself, there would be no finality
 
 to
 
 a judgment. In legal
 
 effect, it
 
 would be nothing more than an order to show cause why it should not be set aside.
 

 If under the law and the facts governing the personal injury suit Mrs. Bell is entitled to the judgment, the decision as to which lies with the Court of Appeal, necessarily, its execution will not be against good conscience.
 

 Our conclusion is that plaintiff has not brought his ease within the rule of reasonable diligence and inequitable enforcement of judgment required
 
 in
 
 an action of nullity.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., absent.