The sole question presented by this appeal is whether the trial judge erred in granting defendant's motion for new trial.
The facts upon which this appeal rests are as follows. On June 27, 1986, while working as a cashier at Handy Andy Pantries, Inc., Deloris Talley purchased a box of Kellogg's raisin bran cereal and a container of milk. While eating the cereal with milk, Talley bit into a solid foreign object and was caused immediate pain. She preserved the object, the box, and the *Page 386 
receipt from its purchase, and then notified Kellogg of her injury.
Later, Talley brought a negligence action against the Kellogg Company and other defendants, under the Alabama Extended Manufacturer's Liability Doctrine. When the case was called for trial on November 9, 1987, all defendants had been dismissed except the Kellogg Company.
At trial, Talley testified that she experienced headaches, dizziness, and nausea, all of which she attributed to the incident giving rise to this suit. The headaches, which dominated her symptoms, were described by her as being analogous to a knife being twisted inside her head.
During the course of the trial, a number of dentists who had previously examined Talley testified that she had suffered serious damage to her right temporomandibular joint, and that the condition would necessitate surgery.
The jury returned a verdict for Talley in the amount of $175,000.00. Counsel for the Kellogg Company thereafter filed a motion for JNOV, or in the alternative for a new trial, the motion for a new trial being based in part on newly discovered evidence. After a hearing thereon, the trial court entered an order granting the motion for new trial. This appeal is from that order.
Kellogg showed at that hearing that, after the trial, its counsel was contacted by the office of a Gadsden neurologist, Dr. Seth G. Spotnitz, concerning payment for medical services provided to Talley 17 months prior to the date of the alleged incident at the Handy Andy Pantry store. The trial judge thereafter issued a subpoena for all medical records of Dr. Spotnitz concerning his examination and/or treatment of Talley.
The medical records in question showed that Talley was evaluated for urinary incontinence and was admitted to the hospital for assessment of a possible spinal cord tumor or multiple sclerosis. Dr. Spotnitz's record states:
 "The patient is a 31 year old, white, right-handed female who was evaluated for the complaint of urinary incontinence. The patient began having problems approximately 1 1/2 yrs. ago. She noted difficulty initiating urination. She would get uncomfortable but would be unable to urinate. She was seen by Dr. Kitchens in Anniston who performed urodynamic studies and found a neurogenic bladder in Oct. of 1984. The patient has been on self-catheterizations. The patient complains of pain in her right leg which is in a radicular type of pattern. She is unable to walk on the leg for the last 6 mos. as a result of weakness. She denied any sensory loss in the leg. She states that she experiences pain in her leg once or twice a week. It is brought on by standing. There is no change with cough or with straining. She denies any history of back injury. She denies any problem with coordination or difficulty with writing. There have been no disturbances in her vision. The patient does give the complaint of headaches. She has one every few months. They are located on the top of the head and behind her eyes. They are associated with nausea and vomiting. The pain is described as a constant nonthrobbing pain. She occasionally experiences visual difficulties with vision being blurred with the headaches. She also complains of dizziness with the headaches. There are no complaints of vertigo at times when she is not having headaches. There is no alternation in speech, swallowing is intact. There is no history of seizures. No difficulty with memory. The patient denies any weakness. She states that her hands get numb occasionally with her headaches, otherwise, there was no history of sensory loss."
Dr. Spotnitz further noted in his record that Talley's "face was slightly asymmetric being diminished on the left, but was felt to be physiologic."
Kellogg contends that Talley failed to disclose her aforementioned neurogenic bladder history in answer to an interrogatory propounded to her. Kellogg propounded to Talley a number of interrogatories, including interrogatory number 20, which reads in relevant part: *Page 387 
 "State whether you have had any prior or subsequent injuries, diseases or difficulties in the areas of the body which you claim were injured in the occurrence which is the subject of this lawsuit, or to areas of your body involving your senses (sight, hearing, etc.), and give the names and addresses of all practitioners of the healing arts who have treated you for such injury, disease or difficulty."
To interrogatory number 20, Talley answered, "No — not applicable."
Later on May 7, 1987, Talley's deposition was taken and she was questioned as follows:
 "Q. Now, I recall you indicating to me that you have, I believe, three or four kids?
"A. I have four.
 "Q. Four children. So obviously, you have previously been hospitalized relating to childbirth. I'm going to ask you, however, if you've ever been hospitalized for any reason other than relating to the birth of your children?
"A. Yes, sir.
 "Q. When were those hospitalizations and where were they?
 "A. I had a hysterectomy 3 years ago. I had a D and C and a laparoscopy, and that was in Anniston. And I was recently in the hospital with — I had blood poisoning."
At the same deposition, Talley was asked:
 "Q. I'm asking you about prior to your injury, have you ever had any problems with headaches or dizziness or earaches yourself prior to this incident?
"A. Headaches.
"Q. Describe those problems for me.
 "A. I have headaches, and it's caused from my eyes when I read. That's, you know, the only problem that I have with them."
Kellogg argues that Talley failed to respond truthfully to interrogatories and to questions during her deposition regarding her medical history and further failed to identify Dr. Spotnitz as someone with whom she had consulted regarding headaches and related symptoms. Kellogg asserts that without such history, it was unable to offer Spotnitz's records at trial or to adequately examine the numerous experts tendered by Talley, regarding the impact of her prior medical history.
Talley, on the other hand, contends that the record illustrates that Kellogg knew, or should have known, of the hospitalization in question at Baptist Memorial Hospital. Talley points out that approximately seven weeks before her deposition, Kellogg requested answers to a number of interrogatories, including interrogatory 22(b), which reads:
 [Q.] "Give the names and addresses of all hospitals, infirmaries, clinics, sanitariums, nursing homes, and asylums in which you have received treatment, including the dates of such treatment:
"* * * *
 "b. for the fifteen years immediately before the incident giving rise to this lawsuit.
 [A.] "Anniston-Regional Medical Center, Anniston, Alabama. Baptist Memorial Hospital, Gadsden, Alabama. Holy Name of Jesus Hospital, Gadsden, Alabama."
Talley argues that Kellogg had the necessary information to obtain her prior hospitalization history from Baptist Memorial Hospital, or any of the other hospitals named in her answer to interrogatory 22(b).
In her response to Kellogg's interrogatory number 20, which requested information concerning any prior injuries or difficulties to the area of the body which is the subject of the lawsuit, Talley inexorably stands by her answer. She asserts that the question expressly sought information regarding the area of her body that she claimed was injured, in this case, her right jaw. In short, Talley argues that there is no nexus between her previous trouble with urinary incontinence and the injury to her jaw.
Alabama codifies the grounds for a new trial and included in that enumeration is *Page 388 
"[n]ewly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial." Code 1975, § 12-13-11(a)(7).
In order for a movant to be entitled to a new trial on the ground of newly discovered evidence, the movant must demonstrate that the evidence:
"1) was discovered [after] trial;
 "2) could not have been discovered with the exercise of due diligence before trial;
"3) is material to the issue;
"4) is not merely cumulative or impeaching; and
 "5) is of such a nature that a different verdict than that already obtained probably would result if a new trial were granted."
Welch v. Jones, 470 So.2d 1103, 1112 (Ala. 1985).
The determination of whether to grant or deny a new trial is for the trial judge, and an order granting or denying a motion for new trial on the basis of newly discovered evidence will not be disturbed on appeal, unless it appears that the trial court abused its discretion. Gilmer v. Salter, 285 Ala. 671,235 So.2d 813 (1970).
After consideration of the facts of this case, we are of the opinion that the trial judge erred. The newly discovered evidence could have been discovered with the exercise of due diligence before trial, and the evidence is, at most, impeaching.
First, Talley listed the hospital where she was treated, and she admitted at the time of her deposition that she had "headaches." Kellogg, in the exercise of due diligence, could have discovered before trial the same evidence it obtained after trial.
Furthermore, the evidence was, at most, impeaching. Impeaching testimony has been described as follows:
 " 'Impeaching testimony' is that designed to discredit a witness, or to reduce the effectiveness of his testimony by bringing forth evidence to show why faith should not be accorded his testimony. [Citation omitted.] Evidence is 'impeaching' so as to bar a new trial if it is outside the evidence already given and impeaches that evidence by attacking the character, motives, integrity, or veracity of the witness who gave the testimony."
Shepherd v. Southern Ry., 288 Ala. 50, 60-61, 256 So.2d 883,892 (1970).
Newly discovered evidence "which merely tends to discredit an adverse party or his witnesses will not avail as a ground for a new trial, 'as such testimony may be discovered in almost every case, and there must be an end to litigation.' "Fries v. Acme White Lead Color Works, 201 Ala. 613, 615,79 So. 45, 47 (1918).
It is our view that had Kellogg been privy to the alleged new evidence before trial, it could have used the evidence only to attack Talley's credibility as a witness concerning the cause of her headaches and to cross-examine her experts.
The order granting the motion for new trial is, therefore, due to be reversed, and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.