562 So.2d 174 (1990)
Dr. Albert D. PACIFICO
v.
Dr. Munford JACKSON.
87-834.
Supreme Court of Alabama.
February 2, 1990.
Rehearing Denied May 4, 1990.
*175 Robert L. Williams of Norman, Fitzpatrick, Wood, Wright & Williams, Birmingham, for appellant.
Alex W. Newton of Hare, Wynn, Newell & Newton, and R. Gordon Pate of Pate, Lewis & Lloyd, Birmingham, for appellee.

ON APPLICATION FOR REHEARING
JONES, Justice.
Upon original consideration of this appeal, we reversed the trial court's judgment and remanded the cause. The application for rehearing is granted and, upon reconsideration, the judgment is affirmed. The original opinion, dated June 12, 1989, is withdrawn and the following opinion is substituted therefor.
Dr. Albert D. Pacifico appeals from a judgment based upon a jury verdict in favor of Dr. John M. Jackson in a medical malpractice action.

I.

Statement of the Case and the Facts
In January 1981, Dr. Jackson underwent open heart by-pass surgery performed by Dr. Pacifico. As a prelude to the surgery, a monitoring device was inserted into Dr. Jackson's radial artery just above the wrist. To prevent possible dislodgment during surgery, the device was attached to Dr. Jackson's wrist with stitches. Upon awakening from surgery, Dr. Jackson complained of pain and numbness in three fingers on his right hand. In December 1982, Dr. Jackson filed suit against Dr. Pacifico. Dr. Jackson alleged that when Dr. Pacifico stitched the monitoring device to his wrist he permanently damaged the median nerve, resulting in pain in the right forearm and right shoulder and numbness in the right hand. Specifically, Dr. Jackson avers that, as a direct consequence of Dr. Pacifico's alleged negligence, he has suffered a major limitation in his ability to work as a general surgeon.
The case went to trial on December 1, 1987, and, on December 8, 1987, the jury returned a verdict in Dr. Jackson's favor, assessing damages in the amount of $1,650,000. The trial court entered judgment on the verdict. Dr. Pacifico filed a timely motion for new trial, or, in the alternative, for J.N.O.V.; and on February 24, 1988, he also filed a motion for relief from judgment pursuant to Rule 60(b), A.R. Civ.P. After a hearing, each of these motions was denied and this appeal followed.
The crux of Jackson's case was his assertion that Dr. Pacifico permanently damaged the median nerve in his right hand and that, as a proximate result, he suffered physical disability and mental anguish and his income was diminished. At trial and throughout the discovery phase of the case, Dr. Jackson maintained that, after the injury to his right hand, he had experienced difficulty in controlling certain surgical instruments and performing the finer, more meticulous surgical techniques.
*176 During the course of the trial, a number of expert witnesses testified on Dr. Jackson's behalf. The substance of their expert opinions was to the effect that Dr. Jackson had suffered a permanent injury to the median nerve in his right hand due to a negligent performance of the surgical procedure by Dr. Pacifico.
Dr. Pacifico contended that Dr. Jackson's injury to his right hand was either the result of a fall in an elevator in 1978, in which he suffered a spinal cord injury, or the result of a stretch injury to the brachial plexus. Dr. John Gould (Dr. Pacifico's witness), an orthopedic surgeon who had studied the hospital charts, testified that a cervical spine injury could affect one or both hands and would not necessarily be equal.
With regard to Dr. Jackson's loss-of-income assertions, Grady C. Hartzog, a certified public accountant, testified that after reviewing the business records of Dr. Jackson, both the records before and those after the injury, he discerned a loss of income in excess of $1,000,000 from 1981 through 1986.

II.

Issues Presented
The issues presented on appeal fall into two categories: 1) Allegations of trial errors; and 2) allegations of post-trial errors. Before addressing the separate issues, we note that none of the Justices would find error with respect to any of the issues relating to allegations of trial errors; but the Justices are sharply divided with respect to the allegations of post-trial errors namely, the trial court's denial of the defendant's motion for a new trial based on the "newly discovered evidence" ground and the trial court's denial of the defendant's Rule 60(b) motion based on the "fraud on the court" ground. (The dissenting Justices express no opinion on the issue of "excessive damages," because, under their view of the case, they would not reach that issue.)
It is also noteworthy that the 5-4 division of the Court does not revolve around the correctness of the applicable principles of law, as set forth in this opinion; rather, it centers upon the application of those principles to the particular facts of this case. The majority is of the view that the facts fall short of crossing that line that separates "deference to the trial court's ruling" from the trial court's "abuse of discretion." The minority, on the other hand, strongly believes that, if the applicable legal principles contemplate any set of facts that may cross that line, those facts are present in this case.
Therefore, because our disagreement is focused upon what we perceive as a narrow policy call issue, we further perceive no useful purpose to be served by setting forth a lengthy analysis of the evidence of record.

III.

Trial Error Issues
First, Dr. Pacifico urges that the count should have directed a verdict in his favor, because, he says, the plaintiff failed to prove that some act of Dr. Pacifico caused the injury. We disagree.
"A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214 (Ala.1978). In considering a motion for directed verdict, the court must apply Rule 50(e), ARCP, under which `a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes [so much as] a mere gleam, glimmer, spark, ... or a scintilla in support of the theory of the complaint....' Dixie Electric Company v. Maggio, 294 Ala. 411, 318 So.2d 274 (Ala. 1975)."
Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 856 (Ala.1981).[1]
*177 We recognize that "[i]n a medical malpractice case, in order to find liability there must be more than a mere possibility that the alleged negligence caused the injury." Howard v. Mitchell, 492 So.2d 1018, 1019 (Ala.1986); and see Williams v. Bhoopathi, 474 So.2d 690 (Ala.1985).
The testimony of Dr. Jackson's experts tended to show that the injury was caused by Dr. Pacifico's negligence in placing the sutures. The testimony of Dr. Pacifico's experts tended to contradict this. A jury issue was presented; a jury verdict was rendered; and the trial court entered judgment accordingly and subsequently overruled post-judgment motions. See Hill Air of Gadsden, Inc. v. Marshall, 526 So.2d 15 (Ala.1988).
Dr. Pacifico further contends that the trial court erred in failing to give requested written instructions on the issue of causation in medical malpractice cases. The trial court gave Alabama Pattern Jury Instruction (Civil) No. 33.00 on proximate cause as a part of its oral charge.
The language of that instruction states the standard by which a court is to judge whether summary judgment or a directed verdict is proper for the defendant; whether it is a question of law for the trial court. If the court determines that it is not, then the question for the jury is whether it is reasonably satisfied 1) that the defendant was negligent and, if so, then 2) that injuries complained of are the proximate result of the defendant's negligence. Because the trial court's original charge was adequate on this point, it did not err in refusing to give the requested charges. Bateh v. Brown, 293 Ala. 704, 310 So.2d 186 (1975); and see Rule 51, A.R.Civ.P.
Dr. Pacifico also contends that counsel for Dr. Jackson improperly commented on the failure of Dr. Pacifico to call certain witnesses:
"Now, in using your common sense about things, does this make any sense to you that on 8th Avenue and 20th Street we've got a medical school and no telling how many neurologists are there that can measure nerves and do EMG tests. Have you heard the voice of a single one?"
Reference to a particular witness's failure to testify is improper if the witness is equally available to both parties. Black Belt Wood Co. v. Sessions, 514 So.2d 1249 (Ala.1986); Harrison v. Woodley Square Apartments, 421 So.2d 101 (Ala.1982); C. Gamble, McElroy's Alabama Evidence, § 191.01(a) (3d ed. 1977). The comment objected to does not refer to the defendant's failure to call a particular witness, but rather to his failure to produce a particular kind of witness. In that sense, and when read in the context of the entire closing argument, it is clear that the comment was directed to the failure of the defendant to counter the testimony of Dr. Jackson's neurologists, or, in other words, the comment was designed to point out the defendant's failure to support his contentions. Therefore, we find no error.

IV.

Post-trial Errors
We now address Dr. Pacifico's "newly discovered evidence" ground for his new trial motion. To fall within the definition of "newly discovered evidence," the evidence must have been in existence on the date of trial. See 6A J. Moore, Federal Practice § 59.08[3] (1982). Therefore, only those facts in existence at the time of trial are pertinent for our review of possible "newly discovered evidence."
This Court has previously written:
"`The propriety of granting [a new trial] motion on the ground of newly discovered evidence must, in this state, be tested by the following settled rules:
"`(1) The evidence must be such as will probably change the result if a new trial is granted;
"`(2) The evidence must have been discovered since the trial;
"`(3) The evidence could not have been discovered before the trial by the exercise of due diligence;
"`(4) It must be material to the issue; [and]
"`(5) It must not be merely cumulative, or impeaching. McCormack Bros. *178 Motor Car Co. v. Arnold, 223 Ala. 504, 137 So. 288; Fries v. Acme White Lead & Color Works, 201 Ala. 613, 79 So. 45; Birmingham Electric Co. v. Linn, 33 Ala.App. 486, 34 So.2d 715.'"
Shepherd v. Southern Ry., 288 Ala. 50, 59-60, 256 So.2d 883, 891 (Ala.1970) (quoting from Forest Inv. Corp. v. Commercial Credit Corp., 271 Ala. 8, 12, 122 So.2d 131 (1960). See, also, Talley v. Kellogg Co., 546 So.2d 385 (Ala.1989).
At the hearing of the motion, the trial judge asked Dr. Pacifico's lawyers the following questions and received the following answers regarding the subpoena:
"THE COURT: All right. Well, let me ask you a question, because I want it to appear on the record, that I think this is correct, and I want you to either confirm it for me one way or the other. I don't recall at any point in time that an instanter subpoena for these records was filed after they didn't produce it.
"MR. WILLIAMS: That's correct.
"THE COURT: Or no request made of the Court to either issue an instanter subpoena nor no request of the Court to attach any witness?
"MR. WILLIAMS: That's correct.
"THE COURT: That's the way I remember it, anyway.
"MR. WILLIAMS: There was no such request.
"THE COURT: All right.
"MR. WILLIAMS: As a matter of fact, Judge, there was no return at all during the course of the trial. It was not until after the trial was over that this handwritten sheet appears at the clerk's office showing it was executed, but that's the way it was.

"THE COURT: Now, at least you knew, though, that you didn't have the records that you'd asked for?
"MR. WILLIAMS: We knew they were not up here. And, of course, we also knew that we had sworn testimony from Dr. Jackson that he wasn't doing major procedures. So, we didn't really feel it was necessary to show how many minor procedures he was doing. He admitted to doing minor procedures." (Emphasis added.)
Dr. Pacifico, without question, in the exercise of due diligence, could have discovered before trial the same evidence he obtained after trial. In short, it was incumbent upon Dr. Pacifico to make sure that the documents he requested via the subpoena be produced before trial.
An order granting or denying a motion for new trial on the basis of newly discovered evidence will not be disturbed on appeal unless it appears that the trial court abused its discretion. Gilmer v. Salter, 285 Ala. 671, 235 So.2d 813 (1970). "Applications for such relief are looked on with distrust and disfavor, and must be granted with caution; and the newly discovered evidence is regarded with suspicion." 66 C.J.S. New Trial § 101 (1950). After a careful review of the record, and our application of the above-stated rules of review, we cannot agree that the trial court's denial of a new trial on the "newly discovered evidence" ground was an abuse of discretion.
Dr. Pacifico next contends that the judgment should have been vacated pursuant to Rule 60(b). Dr. Pacifico neglects to state which subpart of Rule 60(b) serves as the primary basis of his motion, but his briefs on appeal appear to point toward Rule 60(b)(3). Within the body of his Rule 60(b) motion, however, Dr. Pacifico uses the phrase "fraud on the court."
At any rate, we find it unnecessary, for the purposes of this appeal, to discuss the distinction between fraud chargeable under Rule 60(b)(3) and fraud under Rule 60(b)(6). Here, because the facts alleged in the motion do not meet the legal definition of "fraud on the court," the motion, which was timely filed for reason of fraud, necessarily falls within the perimeters of Rule 60(b)(3). For a discussion of the long-standing rule governing post-trial allegations of fraud, see United States v. Throckmorton, 98 U.S. 61, 68-69, 25 L.Ed. 93 (1878); and Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944).
*179 We find Professor Moore's observations pertinent:
"In the Hazel-Atlas case, Justice Black did not attempt to classify the fraud as extrinsic or intrinsic. And, if a motion for relief is made that is within the time for relief applicable to Rule 60(b)(3), a classification of the fraud is normally not necessary, for this clause authorizes relief on the basis of fraud in broad terms. But if the motion cannot be granted under 60(b)(3) because not timely, then it will be necessary to determine whether the fraud is a fraud upon the court."
7 Moore's Federal Practice, ¶ 60.33 at 356 (2d ed. 1987). For further discussion of the distinction between Rule 60(b)(3) fraud and Rule 60(b)(6) fraud, see Lockwood v. Bowles, 46 F.R.D. 625 (D.D.C.1969) (quoting 7 Moore's Federal Practice ¶ 60.33 at 360-62 (2d ed. 1987). See, also, Gleason v. Jandrucko, 860 F.2d 556 (2d Cir.1988), affirmed in part and reversed in part sub nom. Gleason v. McBride, 869 F.2d 688 (2d Cir.1989); and Travelers Indemnity Co. v. Gore, 761 F.2d 1549 (11th Cir.1985).
On the broader public policy issue of reviewing post-trial claims of fraud, the United States Supreme Court, in Throckmorton, supra, 98 U.S. at 68-69, had this to say:
"The mischief of retrying every case in which the decree was rendered on false testimony by perjured witnesses, or on documents whose genuineness was in issue and which are afterward ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."
First National Life Ins. Co. v. Bell, 174 La. 692, 699, 141 So. 379, 381 (1932), is of interest in this connection:
"If a judgment could be annulled on the showing made by plaintiff, litigation would be endless. Another judgment in favor of [defendant] could be annulled on allegations of newly discovered evidence, and so on to the end of time. If an unsuccessful litigant were permitted to attack a judgment as fraudulent on the ground that his opponent failed to disclose certain facts within his knowledge, which by the exercise of reasonable diligence the unsuccessful litigant could have ascertained for himself, there would be no finality to a judgment. In legal effect, it would be nothing more than an order to show cause why it should not be set aside."
The same principle is stated, in different language, in the case of Porcelli v. Schlitz Brewing Co., 78 F.R.D. 499, 501 (E.D.Wisc. 1978), as follows: "[Movant] must ... satisfy the Court that he has substantial evidence of fraud which was not obtainable by due diligence prior to the time of entry of the order."
One who contends that an adverse party has obtained a verdict through fraud, misrepresentation, or other misconduct (Rule 60(b)(3)) must prove by "clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct and (2) that this misconduct prevented the moving party from fully and fairly presenting his case. [Citation omitted.] The resolution of these two issues is within the trial court's discretion, and on review, our only inquiry is whether the trial court abused its discretion." Montgomery v. Hall, 592 F.2d 278, 279 (5th Cir.1979). See, also, Penn v. Irby, 496 So.2d 751 (Ala.1986).
Here, the trial judge heard the testimony, observed the witnesses firsthand, and thus had an intimate feeling of the case, which no appellate transcript can impart. Therefore, it is our considered opinion that substantial deference to the discretion of the trial judge's appraisal of the evidence, including the evidence introduced at the Rule 60(b) hearing, is particularly appropriate in this case.
Finally, Dr. Pacifico contends that the verdict was excessive. The trial court, in accordance with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), entered the following findings on this point:
"One of the grounds assigned by the defendant for a new trial is the alleged excessiveness of the jury's verdict. Consequently, it is this court's understanding that the mandate of Hammond *180 v. City of Gadsden, 493 So.2d [at] 1375, requires the trial court to address that issue.
"Let it be said at the outset that the court finds that this was an `average jury,' composed of capable, conscientious, honest, and intelligent men and women, who undertook to perform their sworn duty as jurors. There is no evidence to the contrary. There is no legal evidence of any misconduct on the part of any juror nor of any attorney in this case. In the opinion of the court, the parties received a fair and impartial trial.
"The plaintiff, Dr. John M. Jackson, was born in 1926 and was a practicing general surgeon in Eufaula, Alabama. The defendant, Dr. Albert Pacifico, was and is, an excellent and renowned heart surgeon with outstanding professional credentials.
"The defendant performed open heart surgery on the plaintiff on January 13, 1981. Prior to the heart surgery, but preparatory to it, the defendant performed a medical or surgical procedure on the right wrist of the plaintiff. The plaintiff claimed that the procedure done on his right wrist (he is right-handed) was negligently done and proximately caused injury to the median nerve resulting in numbness, loss of strength, etc., to certain fingers and thumb to the plaintiff's right hand.
"After the open heart surgery, plaintiff resumed his practice of general surgery about March 1981 until about December of 1981. This was done with various degrees of difficulty. From about January 1982 until November 30, 1987 (trial date), the plaintiff testified he did minor surgery as opposed to major surgery.
"There was evidence for the jury's consideration that the plaintiff had a loss of annual earnings of about $150,000.00 a year from 1981 through 1987. The evidence from Grady Hartzog, Jr., the plaintiff's C.P.A., indicated the plaintiff lost earnings of about $1,000,000.00 from 1981 through 1986.
"The jury had evidence of substantial loss of past earnings, physical pain, mental anguish and loss of earning capacity sustained by the plaintiff. There was also evidence that no medical or surgical intervention would alter the plaintiff's problem with his right hand. The jury rendered its verdict and the court has no evidence that the jury reached the verdict because of bias, passion, prejudice, corruption or other improper motives.
"It has often been said in many opinions of our Supreme Court that the trial court may not substitute its own judgment for that of the jury in determining whether a verdict is excessive and grant a remittitur. Though this verdict is large, this Court cannot say it is excessive without substituting the judgment of the court for that of the jury.
"Under the facts and circumstances of this case, this Court cannot find that the jury's verdict is excessive as a matter of law. This the trial court must be able to do before granting a remittitur."
After a careful review of the record, including all pretrial discovery, the trial proceedings, and the post-trial proceedings, we find no error requiring reversal.
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
HORNSBY, C.J., ADAMS and KENNEDY, JJ., and WRIGHT, Special Justice (sitting by special assignment), concur.
MADDOX, ALMON, SHORES and STEAGALL, JJ., dissent.
HOUSTON, J., recused.
MADDOX, Justice (dissenting).
Although I wholeheartedly concur in Mr. Justice Almon's dissenting opinion, I am writing separately because I believe that the majority has incorrectly cited for support Talley v. Kellogg Co., 546 So.2d 385 (Ala.1989), which I authored. The facts in that case are not comparable to the facts presented in this case and do not support the inference that the verdict in this case should be left undisturbed. Although Rule 60(b)(3), A.R.Civ.P., should not be used to *181 excuse a party's neglect to discover facts before trial, and while perjury may not be used in every case to set aside a judgment, Rule 60(b) does provide that a judgment can be set aside for newly discovered evidence and fraud.
Rule 1(c), A.R.Civ.P., states:
"The rules shall be construed to secure the just, speedy and inexpensive determination of every action." (Emphasis added.)
The "just" result in this case would be to set aside this judgment. The plaintiff would still have the right to present evidence of his professional impairment. The actions of the plaintiff in this case certainly call into question the validity of the verdict and should not be countenanced. If there has ever been a case where Rule 60(b)(3) should be applied, it is this case.
ALMON, Justice (dissenting).
I disagree with the majority's statement of the issues and the characterization of the dissenting Justices' views on other issues not addressed. This case does not present a "narrow policy call" of no precedential value, but an important question as to the circumstances under which a Rule 60(b)(3), A.R.Civ.P., motion for relief from judgment should be granted due to the "fraud ..., misrepresentation, or other misconduct of an adverse party."
On January 13, 1981, Dr. Albert D. Pacifico performed cardiac by-pass surgery on Dr. John M. Jackson. Dr. Jackson has never alleged that there was any deficiency in Dr. Pacifico's performance of the surgery itself. Rather, the alleged malpractice was in the attachment of a stopcock for an arterial line to Dr. Jackson's right wrist by two stitches in the skin. Dr. Jackson alleged that those two stitches damaged the median nerve in his wrist and thereby caused loss of sensation in and control of his thumb, forefinger, and middle finger in his right hand. Dr. Pacifico offered substantial credible evidence that the median nerve is too deep within the wrist and protected by too many layers of tissue to have been damaged by the stitches; that Dr. Jackson's descriptions of his alleged injury have varied over the years and have, for the most part, been inconsistent with the theory of causation that he now alleges; and that any of several other causes, not including any malpractice by Dr. Pacifico, could have caused the alleged loss of sensation and control in Dr. Jackson's right hand.
Thus, there was a significant question of the sufficiency of the evidence as to whether Dr. Pacifico had committed any malpractice that had caused any injury to Dr. Jackson. On original submission of this appeal, the Court voted not to reverse the judgment on that basis, however, because this case was tried under the scintilla rule and because of the presumptions in favor of a jury's verdict and a judgment entered thereon. The issue on which the Court originally reversed and which is presented on this rehearing is whether the trial court erred in not granting Dr. Pacifico's motion for relief from judgment based on evidence that Dr. Jackson was performing surgeries that he had told the jury he could not perform due to the alleged injury to his median nerve.
The record developed at the hearing on the post-trial motions makes it clear that Dr. Jackson misrepresented to the jury his inability to perform surgery. That inability to perform surgery was the aspect of his alleged injury that supported by far the greatest portion of his damages. Dr. Jackson's misrepresentations came to light before the judgment was final. The trial court could have and should have granted Dr. Pacifico's Rule 60(b) motion for relief from the judgment and ordered a new trial.
Dr. Pacifico's motion for judgment notwithstanding the verdict or, in the alternative, a new trial, included as a ground that the verdict "was based on testimony that was not true." A hearing was held on that motion on February 17, 1988, and on February 24, while the motion for J.N.O.V. or new trial was still pending, Dr. Pacifico filed a motion for relief from the judgment pursuant to Rule 60(b), A.R.Civ.P. That motion listed grounds, including allegations that the verdict was the result of mistake, fraud, misrepresentation, or "misconduct *182 on the part of the plaintiff," based on the evidence that was brought forth at the hearing regarding surgeries that Dr. Jackson had performed both before and after the trial. The trial court denied both of those motions without setting forth its reasoning, but the portion of the order denying the request for a remittitur, quoted in the majority opinion, shows that the court, in holding that the evidence supported the damages, relied on Dr. Jackson's testimony that he could not perform major surgery.
The very basis for the award of damages has been seriously called into question and, in all probability, a jury in possession of the true facts might make a substantially smaller damages award and might even return a verdict for Dr. Pacifico.
Dr. Jackson testified at trial:
"Q. By the end of 1981, December of '81, what was your situation with regard to your practice?
"A. I had quit doing all major surgery and was doing basically an office practice and office surgery.
"Q. And since December of 1981, have you performed any surgery?
"A. Yes, sir, I have. Again, I have performed minor surgical procedures and primarily procedures in the office."
"Q. Just tell us a little bit about what you have been doing since '81. What sort of medical practice have you had?
"A. I do a general office practice, and I do minor surgery, taking off moles, skin cancers. I'll do a breast biopsy under local anesthesia in the office. I do needle biopsies. I do endoscopies.
"Q. Are you telling us then that whatever you have made you have made as a family practitioner and not as a surgeon?
"A. Yes, sir, other than the procedures that I have mentioned, the endoscopies and that type thing."
At trial, Dr. Jackson was also asked, "What sort of surgical procedures have you stopped doing?" He answered, "Procedures such as hernias, appendectomies, gall bladder, stomachs, colons, neck surgery, thyroids, this type of procedure." The trial began on December 1, 1987. On July 21, 1987, Dr. Jackson had performed an incisional hernia repair that required general anesthesia and required 60 minutes in the operating room. On August 3, 1987, he had performed an umbilical hernia repair. In his deposition, he had also listed orchiectomies as surgeries that he could not perform. On September 24, 1987, he had performed an orchiectomy.
In addition to those operations he had performed prior to trial, Dr. Jackson performed several operations shortly after trial that were also the very type of operation that he had described as major surgery that he could not perform. On December 18, 1987, 11 days after the jury returned its verdict, Dr. Jackson performed another hernia operation. On December 22, 1987, he amputated a patient's leg; he had listed "amputations" in his deposition as a type of major surgery that he could not perform. On February 4, 1988, he performed a gall bladder operation, although it appears that he performed that operation in conjunction with another surgeon. Other evidence was introduced at the hearing tending to show that both the surgical privileges granted by the hospital to Dr. Jackson and his actual surgery practice were more extensive than he had led the jury to believe. There was also evidence, which Dr. Jackson had not produced, showing that he had been injured in 1985. That injury might well have caused or contributed to whatever difficulty he had in performing surgery.
Counsel for Dr. Jackson argues that the above evidence was merely impeaching and so would not support a motion for new trial under the test set forth in such cases as Shepherd v. Southern Ry., 288 Ala. 50, 256 So.2d 883 (1970). This evidence is not merely a collateral attack on the veracity of a witness whose testimony was offered by one party, however; it is substantive evidence directly contradicting the plaintiff's testimony regarding his alleged damages. Further, the rule against granting a new trial based on impeachment testimony is qualified by the statement in Cooke v. Embry, 219 Ala. 623, 627, 123 So. 27, 30 (1929), that "unless the case is so gross as *183 to make it probable that the verdict was obtained by perjury, a new trial will not be granted on evidence going to the impeachment of a witness."
Most of the evidence cited above came from the operating room logs of the Eufaula hospital where Dr. Jackson performed the surgeries; those logs were introduced and supplemented by the testimony of the administrator of the hospital and the nurse who supervised the operating room. Dr. Pacifico's counsel had filed a subpoena duces tecum for the operating room logs with the court on November 16, 1987, about two weeks before trial. The court issued the subpoena, and there is some evidence that the sheriff served it on the hospital, although the exhibits and the hearing transcript are inconclusive as to service. The administrator and the operating room supervisor testified at the hearing that they did not recall having seen the subpoena. The failure of Dr. Pacifico's counsel to pursue the matter further before or during trial might be construed as enough of a lack of due diligence to support the denial of the motion for new trial under the test set forth in such cases as Hall v. Mazzone, 486 So.2d 408 (Ala.1986); Welch v. Jones, 470 So.2d 1103 (Ala.1985); and Forest Investment Corp. v. Commercial Credit Corp., 271 Ala. 8, 122 So.2d 131 (1960).
That lack of tenacity in pursuing the operating room logs is not a basis for denying the Rule 60(b) motion, however. Dr. Pacifico's counsel had no reason to suspect prior to or during trial that Dr. Jackson was actually performing surgeries that he had said he could not perform. Dr. Pacifico defended vigorously on his evidence that he had not committed any malpractice and that Dr. Jackson's alleged injury was caused by any of several other identified possible causes, and none of the discovery matters before us would have indicated to Dr. Pacifico that Dr. Jackson had misrepresented the extent of his alleged injury; therefore, his lack of suspicion regarding Dr. Jackson's claimed inability to perform major surgery was reasonable under the circumstances. A Rule 60(b)(3) motion for relief from judgment for fraud, misrepresentation, or other misconduct of an adverse party does not necessarily carry a requirement that the moving party must have been persistent in attempting to discover an unsuspected fraud prior to trial. Certainly, the post-trial surgeries form a basis for the Rule 60(b) motion with no requirement of having exercised due diligence to discover them before trial, and they were discovered and the motion was filed promptly after the trial, well within the four-month period for a Rule 60(b)(3) motion, and, in fact, while the motion for new trial was still pending.
A trial court may grant relief from a judgment under Rule 60(b)(3) for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Such relief is discretionary with the trial court,
"and in exercising this discretion [the courts] attempt to balance the desire to remedy injustice against the need for finality of judgments. See Committee Comments, Rule 60, ARCP; Wright & Miller, [Federal Practice and Procedure: Civil] § 2857."
Raine v. First Western Bank, 362 So.2d 846, 848 (Ala.1978); Blue Cross & Blue Shield of Alabama v. Bigger, 538 So.2d 5 (Ala.1988). The need for finality of judgments is not a strong factor here, because the motion was made before the judgment was final, and that need is certainly overcome by the need to remedy the injustice of the verdict rendered without the facts about Dr. Jackson's ability to perform surgery that came to light at the hearing on the post-trial motions.
For the foregoing reasons, I would reverse the denial of the motion for relief from judgment and remand the cause with instructions for the trial court to order a new trial.
SHORES and STEAGALL, JJ., concur.
NOTES
[1] Because this case was filed before June 11, 1987, the "scintilla rule" is applicable. See Code 1975, § 12-21-12.