HORNSBY, Chief Justice.
Cecil Bell sued William Bell because of a dispute over an east-west boundary line. He also sued Wylie Bell and William T. McElroy because of a dispute over a north-south boundary line. The trial court entered a judgment in favor of defendant William Bell in regard to the east-west boundary line dispute.[1] Cecil Bell filed a motion for new trial, which the trial court denied, and Cecil Bell appeals. We affirm.
*149 The trial court entered the following order:
“This matter having come before the Court upon the Complaint of the Plaintiff against [William Bell] and others [Wylie Bell and William T. McElroy] owning property contiguous to that of the Plaintiff alleging, inter alia, that various old fence lines demark the boundary lines of the Plaintiff’s property with that belonging to the Defendants. With respect to this particular Defendant [William Bell], the Plaintiff has further alleged a trespass on the Plaintiff’s property with attendant injuries to the Plaintiff. Except for the trespass aspect of this case, therefore, this is a boundary line dispute.
“The Plaintiff requested that a temporary restraining order be issued to prevent the Defendant, William Bell, from damaging, cutting or otherwise tearing down the fence which had been erected by the Defendant which said fence had the effect of containing the Plaintiff’s cattle in his pasture. The Court duly issued the temporary restraining order and thereafter extended the same upon the posting of good and proper bond by the Plaintiff.
"On or about the 12th day of January, 1989, the Defendant [William Bell] moved this Court to sever the claim made by the plaintiff against him from all other claims made against the various other Defendants. The defendant, William Bell, further answered the Plaintiff’s Complaint admitting Paragraphs 1-3 thereof, but denying Paragraphs 4 and 5. The Defendant, William Bell, further counterclaimed against the Plaintiff alleging a trespass against the Plaintiff and requesting compensatory and punitive damages, together with an injunction against the Plaintiff from interfering with the Defendant Bell’s enjoyment of his property.
With the case having [been] in the above posture, this matter came before the Court for a hearing on the 9th day of February, 1989. Both parties were present at said hearing with counsel and presented testimony, ore tenus. Thereafter, on to wit, the 1st day of March, 1989, the Plaintiff amended his complaint alleging the need by the Plaintiff of access to a public road known as State Line Road lying east of the Plaintiff’s property which said access would be across the Defendant’s land. The Court has taken this amendment as a request for the Court to declare an easement or way of necessity across the Defendant’s property. This new issue having been raised by the Plaintiff’s March 1st pleading resulted in additional testimony having been taken on August 24, 1989, at which time both parties again were present with their respective attorneys of record and testimony presented with respect to the issues raised in the amended complaint. At said hearing, the Court advised the parties that the Court wished to view the parties’ property and, in particular, the area surrounding the dividing line between the parties’ property. The on-site visit was conducted on August 28, 1989, in the presence of the parties and their attorneys of record. Thereafter, the Court has taken this case under consideration and after consideration of the evidence presented ore tenus, together with the Court’s on-site view of the subject property, the Court does hereby enter the following findings of fact:
“FINDINGS OF FACT
“The parties to this action are brothers, each owning property which, at one time, belonged to their parents, both of whom are now deceased. The testimony revealed that the parties’ father died leaving all of the family property to the parties’ mother who, in turn, prior to her death, partitioned the property deeding portions of the family farm to each of her children, including the two parties to this action. It is undisputed that the mother undertook this partition of the family property in 1982, resulting in deeds to each of these two parties to a substantial amount of property sharing a common boundary line by deed description. It is undisputed that the deed given to the Plaintiff is to property lying wholly within the State of Alabama. The deed through which the Defendant, William Bell, claims title to his property, without question, describes property lying wholly within the *150 State of Georgia. The Court notes that neither party had any claim or color of title to the property which they currently own for a period more than ten years prior to the filing of the Complaint in this cause.
“Each party conceded that their respective deed described the property in one state or the other. That is, neither party’s deed attempted to describe property on each side of the Alabama-Georgia state line. That being so, it became apparent to the Court that the real dispute revolved around the location of the Alabama-Georgia line. By way of alternative pleading, however, it appears to the Court that the Plaintiff further has alleged that a pasture fence erected by the parties’ father several decades ago was intended to demark a boundary line between the easternmost property claimed by the [Plaintiff] and the westernmost property claimed by the [Defendant]. Testimony was received by the Court both with respect to the location of the Alabama-Georgia line as well as to the nature, existence and location of the pasture fence to which the Plaintiff claims title.
“Upon the testimony presented, the Court is of the opinion that the Plaintiff’s claim of title [up] to the old pasture fence is without merit. Upon the testimony presented, as well as the Court’s visual inspection of the old pasture fence line, it appears to the Court that said fence meandered from tree to tree and was erected with the obvious intent of catching cattle to direct them to the barn as they traveled from the south pasture. In short, the fence claimed by the [Plaintiff] in his alternative pleading as the boundary line between the property appears to have been a cross fence only, located within the boundaries of the parties’ parents larger tract of property from which the Plaintiff’s individual parcels were ultimately carved. The Court further notes (though it is not necessary to this Court’s decision) that the doctrine of adverse possession seemingly would not apply to this situation since both parties acquired title from a common grant- or, namely their mother, and that the common grantor owned both sides of the fence line in question thereby rendering it impossible for the doctrine of adverse possession to apply under the facts of this case.
“As to the location of the Alabama-Georgia state line, each party presented lay and expert testimony (by land surveyors and civil engineers) on this one issue. The Plaintiff’s expert presented testimony to the effect that he had surveyed what he believed to be the Alabama-Georgia line at the request of the Defendant prior to the Defendant erecting a fence approximately one foot to the east of the survey line. The Court also notes that the Defendant’s expert commenced his survey from a known point on the federal land survey system and utilized other monuments or markers testimony of which revealed [that they] were recognized in the community as known boundary markers. Though the Defendant’s engineer was candid in his testimony that no one knew the exact location of the Alabama-Georgia line within the area of this dispute (or within several miles either side thereof), the Court is of the opinion that the Defendant’s expert utilized reasonable procedures to establish the Alabama-Georgia state line and did so to the satisfaction of this Court as exhibited by exhibits of his survey submitted and received in evidence by the Court. Upon consideration of the evidence therefore, the Court hereby finds that the Defendant’s expert has satisfied the Court as to the location of the Alabama-Georgia line with respect to the property of the parties to this litigation, and upon further evidence received by the Court, it appears that the Defendant erected a new fence line approximately] one foot east of the survey line established by the Defendant’s surveyor and that, therefore, said fence exists wholly within the property of the Defendant.
“As to the Plaintiffs request that this Court declare an easement or ‘way of necessity’, the Court recognizes its general authority and power to grant such an easement or way under certain tightly prescribed conditions. See Helms v. Tullís, 398 So.2d 253 (Ala.1981); Oyler v. Gilliland, 382 So.2d 517 (Ala.1980); and King v. Westbrook, 358 So.2d 727 (Ala.1978). From the testimony presented, as well as *151 the Court’s personal observation derived from his on-site visit, it appears to the Court that the property of the Plaintiff is adequate to give him reasonable access to other public roads or rights-of-way and that the denial of [the] easement or way requested in this action, though perhaps more convenient, does not leave the Plaintiff without other reasonable and adequate access to public roads or rights-of-way. Further, having declared the fence line in existence as being wholly within the Defendant’s property within the State of Georgia, the Court questions (though it does not find) whether it would have the authority in the first instance to declare an easement or way by necessity over and across property which it has declared to be within a sister state, outside the jurisdiction of this Court. The Court makes its observation though [it] does not consider this issue as dispositive of the Plaintiff’s claim of a way of necessity.
“Upon the Defendant’s counterclaim, the Court finds the evidence lacking as to any real damages suffered by the Defendant arising out of the trespass alleged against the Plaintiff in the counterclaim asserted in this cause.
“ORDER
“Having [made] the foregoing Findings of Fact, the Court does hereby ORDER, ADJUDGE AND DECREE as follows:
“1. That judgment in this action is entered against the Plaintiff and in favor of the Defendant as to the Plaintiff’s claim of trespass against the Defendant.
“2. That the Court finds in favor of the Defendant and against the Plaintiff’s claim asserting the old fence line as the boundary line separating the parties’ property.
“3. That the Court does hereby find and declare the dividing line between the parties’ property to be the Alabama-Georgia line as depicted on the map or plat thereof received into evidence prepared by the Defendant’s engineer_
“4. That the Plaintiff’s claim for an easement or way of necessity is hereby denied.
“5. That the Defendant’s counterclaim against the [Plaintiff] for trespass is hereby denied.
“6. That the restraining order entered in this cause against the Defendant be and [it] is hereby dissolved.
“7. Costs of this action are hereby taxed to the Plaintiff for which let execution issue.
ORDERED this the 12th day of April, 1990.”
Plaintiff Cecil Bell raises several arguments, but we deem dispositive the issue whether the trial court erred in denying Cecil Bell’s motion for new trial.[2] Specifically, the issue is whether the trial court erred in not granting a new trial to consider the alleged newly discovered evidence— a survey made by James Barry, Sr., a registered licensed surveyor.
In his affidavit, Barry stated:
“On January 31, 1990, at the request of Cecil Bell, I prepared a plat of a survey which I had run to establish the location of the Alabama-Georgia boundary line between the property of Cecil Bell on the west and in the State of Alabama and the property of William Bell on the east in the State of Georgia. My survey was based on known markers, the location of which I confirmed in accordance with the standards of surveying set by the Board of Registration for Professional Engineers and Land Surveyors for the State *152 of Alabama. As a result of my survey, it is my opinion that the fence depicted thereon which, according to Cecil Bell, was erected by his brother, William Bell, is situated west of the Alabama-Georgia state line and, therefore, is situated on the property of Cecil Bell.”
Plaintiff Bell seems to argue that Barry’s survey was “newly discovered evidence.” In its order denying Cecil Bell’s motion for new trial, the trial court stated: “[On February 9, 1989,] the issues before the court were fully tried....
“Thereafter, by an amendment dated March 1, 1989, the Plaintiff amended his case to state a separate cause of action requesting this court to find, declare and grant [an] easement by necessity in favor of the Plaintiff across property of the Defendant, William Bell. The court ultimately permitted the amendment of the complaint and set an additional hearing for August 24, 1989. The court notes that on August 24, 1989, the Plaintiff filed a ‘Motion to Allow Additional Evidence’ to permit ... Mr. Lynn Deveral, a Civil Engineer, to testify in the case on the issue of the state line between Alabama and Georgia on which testimony had been [presented] by the Defendant through expert testimony. In the Plaintiff’s motion, it was stated that since the trial in February, 1989 ... ‘the Plaintiff has discovered new evidence [of] which he had no knowledge and which he was unable to find after diligent effort, and which bears directly on the true location of the Alabama-Georgia state line.’
“The court permitted the testimony of Mr. Lynn Deveral who did, in fact, testify to procedures available to discover the location ‘on the ground’ of the Alabama-Georgia state line. Thereafter, the court conducted a personal on-site viewing of the property of the Plaintiff and the Defendant in the area around the boundary of the two properties and, thereafter, took the case under deliberation until April 12, 1990, on which date the court entered its judgment on file in this case.
“Thereafter, the Plaintiff filed a Motion for New Trial asserting various grounds among which was the purported findings of James Barry, Sr., an Alabama registered licensed surveyor as evidenced by a map or plat attached to Mr. Barry’s affidavit offered in support of the Motion for New Trial.
“On June 14, 1990, a hearing was conducted in Cleburne County, Alabama, on the Motion for New Trial at which various objections were interposed by the Defendant, most notably that the testimony of Mr. Barry (even if assumed to be accurate, and of such a nature as would be relevant to the issues before the court in the prejudgment proceedings), was nevertheless not grounds for a new trial since it was obviously available at the time of trial of the issues of the case or could have been obtained through diligence. Further contentions were made that the omission of the evidence was not the result of surprise, mistake or excusable neglect.
“At the hearing on said motion, the court proceeded to hear the testimony of James Barry while reserving a ruling on the motion itself.
“Upon the motion of the Plaintiff for a new trial in this cause, and upon due consideration of the testimony offered by the Plaintiff in support of said motion and the objections interposed by the Defendant, William Bell, the court does hereby make the following findings:
“1. It is undisputed that the testimony of Mr. James Barry, as revealed in the June 14th hearing, was relevant to the issues pending in this cause. Notwithstanding the apparent relevance of Mr. Barry’s testimony, however, the court cannot find from said testimony a clear and unequivocal impeachment or attack upon the testimony offered by Defendant Bell’s expert at the hearing in February, 1989, regarding the location of the boundary between the parties’ property. Indeed, Mr. Barry did not review the testimony of the Defendant’s expert and, in fact, through hypothetical questioning, indicated that the Defendant’s expert had utilized reasonable means to locate the common boundary between the parties’ property.
*153 “2. The court further takes notice of all testimony presented over the entire course of this action and notes that the Plaintiff was (or should have been) on notice that the significant issue in this case was the location of the Alabama-Georgia state line and never undertook an independent survey to locate said line ‘on the ground’ until nineteen months after the commencement of the suit when he hired Mr. Barry. Of course, had the Plaintiff acted with diligence, the testimony now offered by Mr. Barry was available and could have been presented at the original hearing in this cause in February, 1989, and certainly before this court conducted the final hearing in August of 1989.
“3. Of course, in order to prevail on a motion for new trial on newly discovered evidence, it must be shown that the evidence at issue was (1) discovered since the trial, (2) could not have been discovered with exercise of due diligence before trial, (3) is material to the issue, (4) is not merely cumulative or impeaching, and (5) is [of] such a nature that a different verdict than that already obtained would probably result if a new trial were granted. While the court cannot state with certainty that the new evidence put forth by Plaintiff would probably result in a different judgment, the court can clearly state that the ‘new evidence’ was certainly material to the issue. Given the nature and content, however, of the new testimony, the court believes that, at best, it would still be faced with weighing the testimony of two expert witnesses who reached two different conclusions. The court need not burden itself with this determination, however, since it must first discover whether the evidence brought forth is, in fact, new evidence which could not have been discovered prior to trial with the exercise of due diligence. Clearly, the testimony of the land surveyor as to the location of a boundary line (and in particular the Alabama-Georgia boundary line) though it may be new evidence with respect to evidence previously heard by the court, would not ordinarily be evidence which could not have been discovered prior to the trial of the case. Indeed, Mr. Barry’s own testimony reflected that he could have made the same findings at any time from July 1, 1988, up to the date that he drew his final conclusions in January of 1989. There is no testimony indicating any peculiar occurrence with respect to land markings, bench marks, monuments or other changes which may have affected a survey conducted at any time between July 1, 1988, and the present time. Thus it appears that the testimony of Mr. Barry, or of someone with his same qualifications, could have been procured at the time of trial.
“The court received no testimony that the lack of testimony, such as Mr. Barry’s, was the result of surprise or excusable neglect. The court does hereby find, therefore, that the evidence now sought to be produced could have been produced at any number of critical junctures of this case and that, as a matter of policy and law, ... the sanctity of a final judgment should not be disturbed under the circumstances and facts presented to the court by this Motion for New Trial. The material elements for the granting of a new trial are absent in this case. Accordingly, the Motion for New Trial is hereby DENIED.”
As indicated in the trial court’s findings, a party seeking a new trial based on newly discovered evidence must demonstrate that the evidence:
“ ‘1) was discovered [after] trial;
“2) could not have been discovered with the exercise of due diligence before trial; “3) is material to the issue;
“4) is not merely cumulative or impeaching; and
“5) is of such a nature that a different verdict than that already obtained probably would result if a new trial were granted.’ ”
Talley v. Kellogg Co., 546 So.2d 385, 388 (Ala.1989) (quoting Welch v. Jones, 470 So.2d 1103, 1112 (Ala.1985)). See, e.g., Hall v.. Mazzone, 486 So.2d 408 (Ala.1986).
“The determination of whether to grant or deny a new trial is for the trial judge, and an order granting or denying a motion for new trial on the basis of newly discovered evidence will not be *154 disturbed on appeal, unless it appears that the trial court abused its discretion.”
Talley, supra, at 388. See, e.g., Welch, supra; Gilmer v. Salter, 285 Ala. 671, 235 So.2d 813 (1970).
In view of the record and the trial court’s findings, we find no abuse of discretion on the trial court’s part in denying Plaintiff Bell’s motion for new trial. Thus, we affirm the trial court’s judgment.
AFFIRMED.
MADDOX, ALMON, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.

. The litigation between Cecil Bell and defendants Wylie Bell and William T. McElroy is still pending. However, the trial court entered a Rule 54(b), A.R.Civ.P., order making the judgment in favor of defendant William Bell final.

. We note that Plaintiff Bell also challenges the findings of the trial court. In this case, the trial court heard ore tenus testimony. For appeal purposes, a presumption of correctness attaches to a trial court’s findings where testimony is presented ore tenus. This presumption is especially applicable in boundary line disputes, particularly where the trial court personally views the property that is in dispute. Howell v. Bradford, 570 So.2d 643 (Ala.1990). See also Hereford v. Gingo-Morgan Park, 551 So.2d 918 (Ala.1989). In this case, we determine from a review of the record and the trial court’s findings that the trial court’s findings of fact were not plainly or palpably wrong, clearly erroneous, or manifestly unjust. See, e.g., Holland v. City of Alabaster, 566 So.2d 224 (Ala.1990); Adams v. Johnson, 565 So.2d 163 (Ala.1990); Paige v. State Farm Fire & Cas. Co., 562 So.2d 241 (Ala.1990).