This is a wrongful death case in which the plaintiff, Betsy Jane Howard, filed suit against the defendants, Dr. Kermit Mitchell, Dr. Joseph Flippen, and Drs. Mitchell and Flippen, a partnership, alleging that negligence on their part proximately caused the death of her child. The defendants filed a motion for summary judgment, alleging that there were no genuine issues of material fact. The trial court granted the motion, and the plaintiff appeals.
In February 1971, the plaintiff first visited the defendants, who are obstetrician/gynecologists, complaining of spotting and passing blood clots. The defendants learned that the plaintiff had been six to eight weeks pregnant and determined that she had suffered a spontaneous abortion. The plaintiff's blood was typed at that time as having an Rh negative factor. The plaintiff became pregnant again in 1972 and delivered a healthy baby girl in December of that year. The baby's blood was typed at that time as containing the Rh negative factor also. In 1974, the plaintiff *Page 1019 
again became pregnant and her doctors discovered at this time that she tested positive for an antibody to the Rh positive factor. This pregnancy was spontaneously aborted. The plaintiff became pregnant once again in 1980 and underwent a cesarean section in March 1981. The infant died several days later from a condition known as erythroblastosis fetalis. This condition results from crossing of the mother's antibodies to the Rh positive factor of the fetus through the placenta and into the fetus's bloodstream, where it destroys the fetus's red blood cells. In 1984, after this suit was filed, the plaintiff's child born in 1972 was correctly typed as having the Rh positive factor.
The defendants treated the plaintiff only on the occasion of her first pregnancy in 1971. She alleges that the defendants did not follow the applicable standard of care in their treatment of her. She contends that since her blood was typed as Rh negative and she had just had a spontaneous abortion, the defendants should have treated her with a medicine known as RhoGAM, in order to prevent the formation of the antibodies to the Rh positive factor. She contends that the RhoGAM treatment, had it been given to her by the defendants in 1971, would have prevented the formation of antibodies to the Rh positive factor and thereby prevented the death of her child in 1981.
The issue presented is whether the defendants' summary judgment was proper. In a medical malpractice case, in order to find liability there must be more than a mere possibility that the alleged negligence caused the injury. Williams v.Bhoopathi, 474 So.2d 690, 691 (Ala. 1985). There must be some evidence that that negligence probably caused the injury.Orange v. Shannon, 284 Ala. 202, 206, 224 So.2d 236, 239
(1969). This rule, of course, does not eliminate Alabama's "scintilla" rule, for if there is a scintilla of evidence that the negligence complained of probably caused the injury, then a jury question is presented. Williams, supra; Orange, supra. After a careful review of the record, we are of the opinion that the plaintiff has not presented a scintilla of evidence that the defendants' failure to give the RhoGAM treatment probably caused the death of her child.
In opposition to the defendants' motion for summary judgment, the plaintiff presented the deposition of her medical expert, Dr. Marvin A. Krane. Through Dr. Krane's deposition testimony, the plaintiff attempted to establish that the defendants had failed to meet the standard of care required of those doctors who treat Rh-negative females following spontaneous abortions. Dr. Krane clearly testified that at the time the plaintiff saw the defendants the accepted medical practice was to give such a person the RhoGAM treatment within 72 hours of the spontaneous abortion, in order to prevent the development of Rh positive antibodies. It is the Rh positive antibodies, allegedly allowed to develop because of the defendants' negligence, which caused the death of the plaintiff's child.
After this testimony, Dr. Krane's deposition then continued on to the crucial point as to when the plaintiff developed the Rh positive antibodies. Dr. Krane testified that there was only a three to five percent chance that the plaintiff could have developed the Rh positive antibodies following the spontaneous abortion for which she was treated by the defendants in 1971. He further testified that there was at least a twenty percent chance that the plaintiff developed the Rh positive antibodies following the birth of her child in 1972. Dr. Krane also testified that there were no tests available now to determine when the plaintiff developed the Rh positive antibodies, and that it was "more likely that it occurred during the full term pregnancy" in 1972. On the plaintiff's re-direct examination of Dr. Krane, he also testified in the following manner:
 "If she could have had the RhoGam after the abortion, we could have eliminated — just about eliminated any sensitization [development of the Rh positive antibodies], and then blame the full term pregnancy, but not having had the RhoGam, *Page 1020 
it's just a matter of conjecture. You have to throw up you're — flip a coin and say which one was it, but you know that most likely you got a better chance to have it after a full term pregnancy than abortion. But which one caused it, I cannot say."
Further, on re-cross examination, Dr. Krane testified to the following:
 "[Q.] He was asking you right at the beginning of his redirect about whether or not you could determine when Mrs. Howard became sensitized as between the 1971 abortion or the 1972 full term delivery, and you made the comment that it would just be conjecture, and you would have to, in effect, toss a coin. Is that what you said?
"A. That's what I said, sir.
 "Q. And so it would be just — it wouldn't even be pure conjecture, in the sense that it would lean more and heavily of the full term pregnancy [sic] as you have already said, would it not?
"A. I would agree with that, sir."
We believe that the testimony of the plaintiff's medical expert does not present a scintilla of evidence that the defendants' alleged negligence probably caused the death of her child. What was said in McClinton v. McClinton, 258 Ala. 542,544-45, 63 So.2d 594, 597 (1952), is appropriate in this case:
 "`Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.'
 "But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. [Emphasis added]"
(Quoting Southern Ry. Co. v. Dickson, 211 Ala. 481, 486,100 So. 665, 669 (1924). See, e.g., McKinnon v. Polk, 219 Ala. 167,168, 121 So. 539, 540 (1929) (a case involving a suit for personal injuries allegedly caused by the negligence of the plaintiff's physician).
According to the deposition of the plaintiff's own expert, it would admittedly be pure conjecture or speculation as to when the plaintiff developed the Rh positive antibodies. Although there was a three to five percent chance she developed them after the spontaneous abortion, there was more than an "equal probability", specifically, there was a twenty percent chance, that the development could be attributed to another cause, i.e., the full term pregnancy in 1972. In effect, the evidence produced by the plaintiff was without "selective application" to any one theory of causation. Thus, any conclusion that the defendants' alleged negligence led to the development of the Rh positive antibodies would be based on pure speculation or conjecture, which is an improper basis for a jury verdict. See,Thompson v. Lee, 439 So.2d 113, 115 (Ala. 1983); Alabama PowerCo. v. Smith, 409 So.2d 760, 763 (Ala. 1982).
Furthermore, Dr. Krane's deposition testimony indicated that there was only a mere possibility that the alleged negligence of the defendants caused the death of the plaintiff's child. Under the standard set forth in medical malpractice cases, this was not enough to present a jury question. There must be some evidence that the alleged negligence probably caused the injury. Williams v. Bhoopathi, supra; Orange v. Shannon, supra. In the absence of any evidence that the defendants' negligence probably caused the death of the plaintiff's child, the trial court properly granted the summary judgment.
For the foregoing reasons, we believe that the trial court properly granted summary judgment for the defendants. Therefore, the judgment is due to be affirmed.
AFFIRMED. *Page 1021 
MADDOX, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.
JONES, ALMON and SHORES, JJ., dissent.