STEAGALL, Justice.
Plaintiff, Maxine Harris, as administra-trix of the estate of her husband, James E. Harris, sued Dr. Victor Theriault and Ever *573 green Hospital, Inc., alleging medical malpractice or negligence that proximately caused the death of Mr. Harris. Dr. Ther-iault and Evergreen Hospital filed separate motions for summary judgment. Mrs. Harris opposed Dr. Theriault’s motion for summary judgment with an affidavit of her expert witness. The trial court granted Evergreen Hospital’s motion and denied Dr. Theriault’s motion. The summary judgment as to Evergreen Hospital was made final pursuant to Rule 54(b), Ala.R. Civ.P.
After taking the deposition of Mrs. Harris’s expert witness, Dr. Theriault filed a motion for reconsideration for his motion for summary judgment. The trial court considered the testimony of Mrs. Harris’s expert witness and granted Dr. Theriault’s motion for summary judgment. Mrs. Harris filed a motion to set aside that summary judgment, which was denied. Mrs. Harris appealed from the summary judgment for Dr. Theriault; she did not appeal from the judgment for Evergreen Hospital.
Mrs. Harris took her husband to the emergency room of Evergreen Hospital on December 25, 1985. Mr. Harris was complaining of headaches, nausea, and weakness on the right side of his body. Mr. Harris was evaluated by Nurse Shelia Chavers, who called Dr. Theriault. Dr. Theriault ordered Demerol and Phenogen to relieve Mr. Harris’s pain. Dr. Theriault examined Mr. Harris and found all body parts and systems to be normal. Dr. Ther-iault diagnosed a vascular headache and discharged Mr. Harris, advising him to secure a follow-up examination, including a CT scan.
The next day, Mrs. Harris took her husband back to the emergency room at Evergreen Hospital. His condition was much worse; his body was stiff and his limbs were limp. Mr. Harris was seen by Dr. Gerald Roberts and was transferred that same day to Jackson Hospital in Montgomery.
Mr. Harris was admitted at Jackson Hospital with a diagnosis of a stroke. Mr. Harris was seen by Dr. John Hackman, a neurosurgeon, and was also seen in consultation by Dr. James N. Anderson, who performed a left carotid endarterectomy. Mr. Harris appeared to be fine the morning following his surgery, until he had a series of seizures and became unresponsive, with fixed dilated pupils. His condition did not improve and he remained on supportive care until he died on January 2, 1986. Mr. Harris’s death was caused by a post-operative embolic stroke.
The issue presented is whether the trial court correctly granted Dr. Theriault’s motion for summary judgment based on a lack of proximate cause. This Court in Howard v. Mitchell, 492 So.2d 1018 (Ala.1986), stated, “In a medical malpractice case, in order to find liability there must be more than a mere possibility that the alleged negligence caused the injury. There must be some evidence that that negligence probably caused the injury.” 492 So.2d at 1019 (citations omitted). This case was filed on April 6, 1987, before the scintilla evidence rule was abolished. See Ala. Code 1975, § 12-21-12. Accordingly, if there is a scintilla of evidence that negligence or wanton, willful, and malicious conduct on the part of Dr. Theriault probably caused Mr. Harris’s death, then a jury question was presented and summary judgment was improper.
In opposition to Dr. Theriault’s motion for summary judgment, Mrs. Harris presented the affidavit of her medical expert, Dr. J. DeWitt Fox. In his affidavit, Dr. Fox stated:
“The delay of 48 hours resulted in withholding emergency care, which would have resulted in a CT scan and an earlier diagnosis and surgical treatment by some 48 hours, which might have avoided the cerebral embolus, which led to his death. It appears that the diagnosis of vascular headaches was actually a vascular spasm. Careful neurological examination including a CT scan by a neurologic consultant would have resulted in earlier diagnosis. No Neurologic consultant or CT scan was utilized in this case, while the patient was in the Emergency room of the Evergreen Hospital, Evergreen, Alabama. This jeopardized the *574 patient’s chance for successful surgery and treatment.”
Dr. Theriault based his motion to reconsider his motion for summary judgment upon Dr. Fox’s deposition. Dr. Fox’s deposition testimony in regard to the cause of Mr. Harris’s death is as follows:[1]
“Q: What is your understanding of how Mr. Harris’ death occurred? What led to his death?
“A: Well, I think he had an embolus that possibly broke away at the time of the surgery or some other time, which completely occluded his probably middle meningeal but middle cerebral artery and caused massive infarction of his brain on the left side and he passed away.
“Q: When, in your opinion, did that occur?
“A: I assume that it was postoperative, but—
“Q: All right. So it’s your opinion that he, through an embolus after the endar-terectomy, which led to his death?
“A: Yes.
“Q: After they had gone in and cleaned out the plaque and the clot that was there?
“A: Yes.
“Q: In other words, he had a massive stroke because of a piece of clot from somewhere going up and occluding the middle meningeal artery of his brain? “A: Yeah. (Dr. Fox’s deposition, page 71, line 17 through page 72, line 11.)
[[Image here]]
“Q: Well, after the endarterectomy, Mr. Harris did pretty well for a short time, yes?
“A: Yes.
“Q: And then he suddenly got much worse?
“A: True.
“Q: Which led to his death?
“A: True.
“Q: And that is why you’ve testified that in your opinion, he threw an embo-lus after the endarterectomy which caused his death; is that correct?
“A: Yes.
“Q: Do you know what the site of that embolus was? Do you have an opinion as to where the site of that embolus was?
“A: I imagine that it was originating from the operative site. I don’t know, but that’s a likely possibility.
“Q: In other words, the site of the scar, for lack of a better term?
“A: Uh-huh.
“Q: For a lack of a better term, where the plaque and clot was removed?
“A: Right.
“Q: That can cause further clotting, and in your opinion in this case, caused further clotting which eventually broke off and embolized and went to his brain and caused his death?
“A: Right. (Dr. Fox’s deposition, page 73, line 24 through page 75, line 1.)”
Dr. Fox further testified that if Mr. Harris had been appropriately diagnosed during the first emergency room visit, the same treatment would have been instituted as was instituted after he was transferred to Jackson Hospital and that most likely the post-operative embolus which caused Mr. Harris’s death did not occur as the result of a negligent act. Dr. Fox testified that there was nothing more that could have been done to protect Mr. Harris from the post-operative embolus that led to his death. Dr. Fox’s testimony in that regard is as follows:
“Q: How is he protected from a stroke if after that endarterectomy a clot forms at the site of the endarterectomy and embolized to his brain?
“A: He wouldn’t be.
“Q: He wouldn’t be, and that’s your opinion as to what happened in this occasion?
“A: Yes. (Dr. Fox’s deposition, page 80, lines 17 through 23.)
[[Image here]]
*575 “Q: That’s your opinion that you expressed in this ease as to the cause of death, right, the embolic event subsequent to the endarterectomy?
“A: Don’t know.
“Q: Well, obviously—
“A: That’s what all the reports are.
“Q: And obviously, if that’s what happened, the surgical procedure didn’t prevent that?
“A: Well, it prevented it for 24 hours.
“Q: And then it occurred?
“A: Right. So he was improved, evidently, for 24 hours.
“Q: You agree that if the patient had been appropriately diagnosed during the first emergency room visit, there’s no doubt that the same treatment would have been instituted as was instituted after he was transferred to Jackson?
“A: I imagine.
“Q: And I'm referring to paragraph— the first full paragraph on page 4, — and there's a continuation of that sentence, it says, ‘It is highly likely due to the nature of the disease that the outcome would have been similar.’ Do you agree or disagree with that statement?
“A: That’s providing you’re assuming that it’s an embolus.
“Q: All right, sir. So you agree with that, assuming it was an embolus?
“A: Yeah. (Dr. Fox s deposition, page 159, line 22 through page 160, line 24.)
[[Image here]]
“Q: Would you agree with the statement at the bottom of page 4 that most likely the embolus occurred from clotting at the operative site on the carotid artery and is not from a negligent act?
“A: Yes. (Dr. Fox’s deposition, page 161, line 22 through page 162, line 1.)”
After a review of the record before us, we are of the opinion that Mrs. Harris has failed to present a scintilla of evidence that Dr. Theriault’s failure to appropriately diagnose Mr. Harris’s condition probably caused Mr. Harris’s death. The trial court correctly granted Dr. Theriault’s motion for summary judgment. We, therefore, affirm the judgment of the trial court.
AFFIRMED.
HORNSBY, C.J., and MADDOX and ALMON, JJ., concur.
ADAMS, J., concurs in the result.

. Although Dr. Fox’s deposition was not included in the record, the trial court quoted extensively from Dr. Fox’s deposition in its order granting Dr. Theriault’s motion for summary judgment. We quote from the deposition as it was quoted by the trial judge.