On Application for Rehearing
This Court's opinion of July 28, 2000, is withdrawn, and the following opinion is substituted therefor.
Leigh Ann Lucas was indicted for two counts of capital murder, violations of § 13A-5-40(15), Ala. Code 1975. Count I charged Lucas with intentionally causing the death of her two-and-one-half-year-old son "by inflicting multiple blunt force injuries and/or causing directly orindirectly the death of the child." Count II charged Lucas as follows:
 "Leigh Ann Lucas, did, intentionally cause the death of Brandon Austin Lee Steele, a child less than 14 years of age having been born on or about November 24, 1994, by knowing that her child, a child approximately two and one-half years old, was critically injured and in immediate need of life-saving medical services, she intentionally caused the death of the child by failing in her parental duty to provide said necessary medical services." (Emphasis added.)
Lucas was tried before a jury. The jury acquitted Lucas of Count I, but found her guilty of Count II. The trial court sentenced Lucas to life imprisonment without parole. The Court of Criminal Appeals affirmed Lucas's conviction and sentence. Lucas v. State, 792 So.2d 1161
(Ala.Crim.App. 1999). After the Court of Criminal Appeals denied Lucas's application for rehearing and her Rule 39(k), Ala.R.App.P., motion, she petitioned this Court for a writ of certiorari, which we granted.
Lucas contends that the trial court erred in denying her motion for a judgment of acquittal on Count II on the ground that the State failed to prove causation. Lucas contends that the evidence does not establish, as required by § 13A-2-5(a), Ala. Code 1975, that, but for Lucas's failure to seek medical treatment for her son, he would have survived. This opinion addresses the issue of whether the evidence establishes causation — that is, whether the evidence establishes, as required by law, that Lucas's failure to provide medical services "caused the death of the child," as alleged in the indictment.
Alabama courts have recognized that, under common law, parents have a legal duty to secure medical treatment for their children. Ex parteUniversity of South Alabama, 541 So.2d 535 (Ala. 1989); Osborn v.Weatherford, 27 Ala. App. 258, 170 So. 95 (1936). "`The omission or neglect to perform a duty resulting in death may constitute murder where the omission was willful and there was [a] deliberate intent to cause death. . . .'" Albright v. State, 50 Ala. App. 480, 484, 280 So.2d 186,190 (1973), cert. denied, 291 Ala. 771, 280 So.2d 191 (1973) (citations omitted). Section 13A-2-5(a), Ala. Code 1975, the statute governingcausation in criminal cases, provides:
 "A person is criminally liable if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was sufficient to produce the result and the conduct of the *Page 1171 
actor clearly insufficient." (Emphasis added.)
Under this statute, Lucas can be held criminally liable for her son's death only if his death would not have occurred but for her failure to provide him with medical treatment. If the State did not introduce evidence that medical treatment would have saved or prolonged the child's life, then the State did not prove that Lucas's failure to provide the child with medical treatment actually caused, or resulted in, the child's death.
The proof of causation essential to hold Lucas liable for her son's death in this case is analogous a fortiori to the proof of causation essential to hold a medical service provider liable in a civil medical malpractice case. If Lucas had promptly taken the child to the hospital but the medical service providers had not promptly treated the child, what proof of causation would be necessary to hold the medical service providers civilly liable for the child's death? Indeed, Lucas is one step further removed from the death than the medical service providers would be in an analysis of causation since her only breach of duty was not taking the child to the medical service providers. Moreover, because the case before us is a criminal prosecution, the burden on the State to prove causation is greater than the burden to prove causation in a civil malpractice action.
"To prove causation in a medical malpractice case, the plaintiff must prove, through expert medical testimony, that the alleged negligenceprobably caused, rather than only possibly caused, the plaintiff's injury." University of Alabama Health Servs. Found. v. Bush,638 So.2d 794, 802 (Ala. 1994) (emphasis added). In the absence of evidence that treatment of the sick patient by the defendant-doctor would have saved or extended the life of the patient, the defendant-doctor cannot be found to have caused the death of the patient. Smith v.Medical Ctr. East, 585 So.2d 1325 (Ala. 1991); Sasser v. Connery,565 So.2d 50 (Ala. 1990); Harris v. Theriault, 559 So.2d 572 (Ala. 1990); and Peden v. Ashmore, 554 So.2d 1010 (Ala. 1989).
In the case before us, the Court of Criminal Appeals held:
 "The State was not required to prove, as the appellant alleges, that the victim would have `survived' if the appellant had obtained medical care sooner. Whether the victim would have lived or died after receiving `life-saving' and `necessary' medical care would in no way alter the appellant's parental duty to provide that care." (Emphasis added.)
792 So.2d at 1168. Through a preoccupation with the essential element of duty, this holding mistakenly discounts the essential element ofcausation. The crucial issue is not whether Lucas had a duty to provide her injured child with medical treatment or whether she breached that duty. The evidence is sufficient to establish that Lucas, as the child's mother, at some point owed a duty to seek medical treatment for her child. The evidence is arguably sufficient to establish that, at some point, Lucas breached her duty by failing to seek medical treatment sooner than she finally sought it. The compelling issue on the merits before this Court, however, is whether the evidence establishes that Lucas's breach of duty caused her son's death. Does the evidence establish thatbut for Lucas's failure to seek prompt medical treatment for her son, her son's life would have been saved or extended? See § 13A-2-5(a).
Neither the emergency room pediatrician, Dr. Marsha Raulerson, nor the forensic pathologist, Dr. Leroy Riddick, testified that the child would have lived or lived longer if he had received medical treatment promptly after he was battered. *Page 1172 
They were the State's only medical experts.
Dr. Raulerson testified that, after she determined that the child had been physically abused, she notified the police and visited Lucas's home with the police. (R. 23.) She testified that, upon viewing the child's room, she noticed some "vomited blood and vomited [bile]" on his sheets and on a towel, and on the basis of her observations of the vomited "green [bile]," she believed the child suffered from an "abdominal obstruction." (R. 1025.) When the prosecutor asked Dr. Raulerson about her experience in treating children with internal injuries, the following exchange occurred:
 "[Prosecutor]: Dr. Raulerson, have you treated children before with internal injuries similar to what you have learned this child suffered from?
 "[Dr. Raulerson]: I have had one other patient in my practice who came in with a distended abdomen, who was already dead, who had a ruptured bowel, but the child was dead when they came in. I have only had one child like that previously. I have treated children with ruptured appendices who were very sick and had distended abdomens and were throwing up green stuff because of a ruptured appendix, and I have probably treated four or five of those in my career.
 "[Prosecutor]: Would the symptoms from the ruptured intestine be similar to those —
"[Dr. Raulerson]: As a ruptured appendix, uh-huh.
 "[Prosecutor]: — that you would expect from a ruptured appendix?
"[Dr. Raulerson]: Uh-huh."
(R. 1026-27.) Although Dr. Raulerson testified that she had treated children who had ruptured appendices, which cause the same symptoms and pain as a ruptured bowel, she did not testify that those children survived longer or survived at all. (R. 1027.) Most notably, she never testified that, had Lucas's son received medical treatment promptly after he was injured, he would have lived any longer than he did.
Dr. Leroy Riddick, the forensic pathologist, testified that Lucas's son died from multiple blunt force injuries and that the most fatal injury was the injury to his abdomen. (R. 1268, 1272.) Dr. Riddick testified that a ruptured abdomen would not cause immediate death. (R. 1294.) However, when the prosecutor asked Dr. Riddick whether the child would have lived if he had received medical treatment the day after his injuries were inflicted, Dr. Riddick answered that, because he deals only with dead bodies, not living persons, he had no opinion on whether the child would have survived. (R. 1306.) Although Dr. Riddick testified that the appropriate treatment for the child's ruptured bowel "would have been to find out what was going on inside the abdomen either through X-rays and then surgery and then if it had perforated at that time, put the bowel back together," he never testified that this course of treatment would have prolonged or saved the child's life in this case. (R. 1306-07.)
The State argues that, if the direct evidence does not prove causation, nonetheless the circumstantial evidence proves causation. However,
 "`[a] finding of guilt from circumstantial evidence is based on the "inference of a fact in issue which follows as a natural consequence according to reason and common experience from known collateral facts." This is to be distinguished from a supposition, which is "a conjecture based on the possibility or probability that a thing could have or may have *Page 1173 
occurred without proof that it did occur." "Mere possibility, suspicion, or guesswork, no matter how strong, will not overturn the presumption of innocence."'" (Emphasis added.)
Ex parte Bailey, 590 So.2d 354, 359 (Ala. 1991) (quoting Ex parteMauricio, 523 So.2d 87, 94 (Ala. 1987)). See also Howard v. Mitchell,492 So.2d 1018 (Ala. 1986).
Thus the record does not contain evidence tending to prove that, butfor Lucas's failure to seek prompt medical treatment for her injured son, he would have survived, or survived longer. Accordingly, the State failed to prove the essential element of causation. The State's evidence on its theory that Lucas battered the child to death does not supply proof of causation, as the jury acquitted Lucas on Count I charging that she battered the child to death, and Count II does not accuse her of battering the child to death.
Consequently, the trial court erred in denying Lucas's motion for a judgment of acquittal on Count II, and the Court of Criminal Appeals erred in affirming the judgment of the trial court. Therefore, the judgment of the Court of Criminal Appeals is reversed and this cause is remanded for that court to instruct the trial court to enter a judgment of acquittal.
OPINION OF JULY 28, 2000, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
HOUSTON, COOK, SEE, LYONS, and ENGLAND, JJ., concur.
HOOPER, C.J., and MADDOX and BROWN, JJ., dissent.